RECEIVED

MAR 26 2025

KELLY L. STEPHENS, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Elizabeth Nelson,
Albert Thrower,

     Appellants,

Vs

                                   Case No. 24-2095

Robert Scott, et al.,

     Defendants

BRIEF OF APPELLANTS ELIZABETH NELSON AND ALBERT THROWER PRO SE
ON APPEAL FROM THE EASTERN DISTRICT OF MICHIGAN

For the Appellants
Albert Thrower pro'se
PO 6702
Cleveland OH 44101
2168566626 al.thrower1@gmail.com

Elizabeth Nelson pro'se
PO Box 1422
Warren MI 48090    xpresstax500@gmail.com
3133197370

FOR THE APPELLEES
Mark Straetmans/Rachel Selina
255 E Brown St #320
Birmingham, MI 48009
mstraetmans@berrymoorman.com

Thomas Stidham
1401 W Fort St, Rm 1006
Detroit MI 48233
2483030306 tsstidham@hotmail.com

Jennifer Mead
PO Box 806042
St Clair Shores, MI 48080
3134851250 meadjenn@hotmail.com

2486459680

Case: 24-2095   Document: 9   Filed: 03/26/2025   Page: 1

## STATEMENT OF THE FACTS

Appellant Thrower = ANT(T) arrived at 7568 Hudson Ave Warren MI 7/7/21 from Cleveland OH to mow grass at a property he manages, owned by a corporate entity. Appellees Scott,= (EE) city of Warren MI a (EE) city of Warren supervisor-sued in his individual capacity, received notice of ANT (T) arrival from dismissed appellee BRANSON-not served- who had become informants in return for STOP on their eviction per court record.

A year earlier, (D) Branson allowed appellEES Scott, Cummins and others in the basement of the property where they subsequently gained access to a basement apartment where appellants stayed when in town and took pictures. The magistrates found this did violate the appellants 4th Amendment rights as renter Branson did not have authority or "apparent authority" to allow appellees in but that the claim was time-barred under applicable statute of limitations.

7/7/21 Appellee Scott arrived with other defendants (EES) who ANT-T observed from the basement. (EE) Scott (now deceased) ordered ANT-T Silverado towed & appellant Nelson=ANT-N, a renter's Honda towed that was parked behind 7568 Hudson Ave on Cement Drive parked at an angle, ANT-N was in the hospital being taken there by ambulance days before.

After towing 2 cars, EE-Scott and other EES had Judge Chumra issue a dated 7/7/21 but not time stamped order to tow "inoperable vehicles". Per the record, 2 cars were "operable" as the magistrate correctly found. As a matter of law and fact this order did not comply with Due Process because it was never alleged that same was served on the appellants or time stamped so as to determine if signed before or after cars were towed. This is a Due Process claim.

Appellee Scott and other defendants appellees left Hudson Ave Warren MI. ANT-T attempted to retrieve Silverado at defendant-appellee Service Towing Inc ((EE) STI) tow yard the next day. Defendants-appellee Hertz Bros., (EE) and employee appellee (EE) Randy Sullivan stalled ANT-T at tow yard for almost an hour and per the prearranged agreement called (EE)-Scott who raced over to (EE) STI and into (EE)- SERVICE TOWING INC. garage and did a citizen arrest per his own reasoning stated same for alleged outstanding misdemeanor housing violations, assaulting ANT-T and searching his person and Aldi's bag.

ANT-T made a police report in re the assault and battery, kidnapping & illegal citizen's arrest per the record.

Days later appellants (ANTS) T & N retrieved vehicles. ANT-N Honda sustained damage to rear of car.

This 42 USC Section 1983 lawsuit follows.

## STATEMENT OF THE CASE

It is well-settled law that city employees must have a search warrant to enter private property. Per facts in the complaint, the defendant-appellees (EES) entered 7568 Hudson Ave Warren MI about 3/9/20 and gained access to appellants' basement apartment, taking pictures of same. On 7/7/21 the appellees again entered the appellants' curtilage and towed 2 "operable vehicles" and removed personal property without permission or warrant. On 7/8/21 when (ANT)-T went to pick up his Silverado per earlier agreement with (EE) Scott, (EE) Hertz Bros., -owner of (EE) STI Towing stalled (ANT) T and called (EE) Scott who did a "citizens arrest" on (ANT) T. This 42 USC Sec 1983 followed filed within 2 yrs of the facts alleged.

ECF No. 46, PageID.526 "PROCEDURAL HISTORY Plaintiffs Elizabeth Nelson and Albert Thrower filed this case on July 5, 2023. (ECF No. 1). The operative amended complaint was filed on August 25, 2023. (ECF No. 29). Defendants Badalamente, Cummins, Dwyer, Fourts, Gauss, Kijewski, Lipa, Michaels, Murph, Reichling, Ross, Scott, Trembath, Warack, the City of Warren, and City of Warren zoning department moved to dismiss the amended complaint and for summary judgment. (ECF No. 35). The motion is fully briefed. This matter was referred to the undersigned for all pretrial matters. (ECF No. 44)."

Magistrate ECF 46 stated the facts correctly in re the allegations of the complaint including that (EE) Scott had performed a "citizens" arrest but erroneously opined that (ANT)-Thrower=T did not argue or allege that (EE) Scott lacked "probable cause" to do a "citizens arrest" when per Michigan Code that is not element that needs to be considered.

The Magistrate ordered the appellants to file a more detailed complaint which they did over objection. Discovery was had in the district court with the trial court adopting the recommendation of the magistrate and dismissed the case with the trial court affirming same. This timely appeal follows. Jurisdiction is proper was allegations of federal Constitutional claims happened in Macomb County, Warren, Mi.

BRIEF OF APPELLANTS

AMENDED COMPLAINT ALLEGATIONS This lawsuit is about a search of Plaintiffs' residential building located in Warren, Michigan, and about the City of Warren towing Nelson's cars that were parked on the property. At the time of the alleged events, Thrower was trying to evict tenant Kimberly Branson, who occupied the upper level of the Warren property, but the eviction was stayed beginning in March 2020 because of the Covid-19 pandemic. (ECF No. 29, PageID.87, 91). Thrower told Branson that she was only allowed in the basement for emergency purposes. While they primarily resided in Ohio, Nelson and Thrower used the basement as their residence (Id. at PageID.89). On March 11, 2020, Branson used her key to the basement and allowed Defendants Scott, Cummins, Gauss, Badalemente, Kijewski, Murphy, Warack, Lipa, and Ghaham to enter it. These Defendants did not have a search warrant and despite the ongoing pandemic did not wear a mask inside the premises. (Id. at PageID.90). Plaintiffs assert that Branson allowed the Defendants in the basement because she was a "secret informant" for the City of Warren. (Id. at PageID.90). Plaintiffs learned of Defendants' search of the residence on April 23, 2020.1 (Id. at PageID.91). 1Plaintiff's wrote "4/23." Read in context, they did not mean that they found out about the search during April 2023; rather, they became aware on April 23, 2020. 2 Case 2:23-cv-11597-BRM-CI ECF No. 46, PageID.528 Filed 04/09/24 Page 3 of 25 On July 7, 2021, Judge Chumra of the 37th District Court issued a warrant to tow vehicles on Plaintiff's property. The warrant authorized towing of "inoperable vehicles." (Id. at PageID.93). Two vehicles were towed from the property that day, but according to Plaintiffs they were towed before Judge Chumra's order was issued. The same day Defendant Scott wrote a ticket for having an unsafe structure for human habitation at Plaintiff's and Branson's Warren residence. (Id.). Some Defendants removed Plaintiffs' property that included grills, wood, and drainage piping, and charged Plaintiffs $687.50 for "illegally" taking that property. (Id. at PageID.94). On July 8, 2021, Thrower went to the tow yard to retrieve the vehicles. Defendant Hertz stalled Thrower while Defendant Scott was on his way to the tow yard. When Scott arrived, he threw Thrower against the wall and conducted a citizen's arrest for the unsafe structure-for-habitation ticket. (Id. at PageID.94-95). While restraining him, Scott searched through Thrower's bag. (Id. at PageID.95). Thrower alleges that Scott lacked authority to conduct a citizen's arrest for a misdemeanor charge. Warren police then arrived but did not arrest Scott for kidnapping; instead they arrested Thrower on the misdemeanor housing violation. (Id.). The claims are as follows.

Claim One alleges that Scott, Gauss, Cummins, Badalamente, Kijewski, Lipa, Murphy, Warack, Michaels, Trembeth, and Ross 3 Case 2:23-cv-11597-BRM-CI ECF No. 46, PageID.529 Filed 04/09/24 Page 4 of 25 violated the Fourth and Fourteenth Amendments by illegally entering the basement apartment without a search warrant or other authority. (Id. at PageID.97). In Claim Two, Plaintiffs assert that those same Defendants entered the property without wearing masks or gloves, thereby exposing Plaintiffs to a "state created risk" of contracting Covid-19 in violation of the Fourth, Fifth, and Fourteenth

Amendments. (Id.). Claim Three alleges that towing the vehicles on July 7, 2021, violated the Fourth, Fifth, and Fourteenth Amendments because both cars were operable and Plaintiffs were not given notice and an opportunity to be heard before the cars were taken. (Id. at PageID.97-98). Claim Four says that Scott violated the Constitution by conducting a citizen's arrest, restraining Thrower and spitting on him which exposed Thrower to Covid-19. (Id. at PageID.98). Claim Five alleges that Scott's actions during the alleged arrest constituted assault, battery, and kidnapping. (Id.). In Claim Six, Plaintiffs stated that the Defendants' actions as stated in the complaint exposed them to a state created risk because they had to retrieve the towed vehicles during a pandemic. (Id. at PageID.99). Finally, in Count Seven, Plaintiffs assert that "Per facts rewritten herein intentional infliction of emotional distress." (Id.).

"When it comes to ..Fourth Amendment. The home is first among equals", *Florida v Gardines*, 569 US 1, 6 "Ibid...full practical effect ..Court considers curtilage—'area 'immediately surrounding and associated with the home'-to be 'part of the home itself for Fourth Amendment purposes'" *Jardines, Id*. Per *NILI v City of Warren et al* 15-cv-13392 consent decree ₱12 appellee=(EE) city of Warren agreed to obtain an administrative warrant if denied entry" ECF 40 Ex 12. ECF 55 complaint "14. All of the private parties (appellees) Hertz Bros., (EE)-employee Sullivan acted 'under color of state law', acting 'in concert', 'conspiracy' with state actors....' to be engaged in joint action, a private party must be a 'willful participant' with the state actor ...in the activity which deprives others of constitutional rights". *Dennis*, 449 US @ 27. A private party is liable ...its particular actions are 'inextricably intertwined' with those of the government. *Brunette*, 294 F.3d 1211. Substantial cooperation between the private party and the state must be shown. *Mathis. Pac. Gas & Elec. Co*. 75 F3d 498, 503 An agreement between government and a private party for some-governmental type action can create a state action' ...*Rendell-Baker* 457 US at 842-43, "A symbiotic relationship may also arise from the government's exercise of control over the private parties actions" *Brunette*, 294 F3d 1213. The private appellee parties, (EE) Hertz Bros., employee STI (EE) Sullivan, STI Towing Inc. fit this definition of private parties in concert with appellee SCOTT and the other appellees acting in concert, 1st towing cars off private property 2) stalling (EE) Thrower=T at (EE) Service Towing Inc (STI) business and calling (EE) Scott to do a 'citizens arrest',  per facts of complaint ECF 29, 55.

Per ECF 55 "15 (Appellee) city of Warren is a local government entity that appellee Scott and other appellees work for and is being sued for 'failure to train' its employees. Per ECF 83  Ex 36, p 1-10 show property completely fenced in when cars were towed and personal property taken. Appellee Service Towing Inc =(EE) STI Hertz Bros., employee appellee Sullivan acted in 'concert', 'tandem', 'conspiracy' to tow appellants' vehicles. *Nugent v Spectrum Juv Servs*, 72 F4d 135, 139-140 CA6 'test ..employed to determine when a private entity is entwined in private entity's management or control' *Brentwood Acad v Tenn Secondary Scholl Athletics Ass'n,* 121 SCt 924. In this case... facts of the complaint-same as rewritten herein that appellees STI Towing,   Hertz Bros,  were called by state actors to tow appellants cars off private property and/or tow "inoperable vehicles", when appellants cars were "operable" order issued after cars towed. The next day 7/8/21 appellees STI Towing, Hertz Bros, employee appellee Sullivan stalled ANT-T at the appellee STI Towing yard and building per prearranged agreement to have

appellee Scott comes and attack ANT-T and do an illegal 'citizens arrest'. See Ex A "THE TROUBLE WITH CITIZEN'S ARREST-DON'T THINK THAT WAY, in re the reasons NOT to do a "citizens arrest".

As the Magistrate correctly noted ECF No. 46, PageID.530 "When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation omitted); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." 16630 *Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013). The Court holds pro se complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by pro se parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)"

"When it comes to ..Fourth Amendment. The home is first among equals", *Florida v Gardines*, 569 US 1, 6 "Ibid…full practical effect ..Court considers curtilage—'area 'immediately surrounding and associated with the home'-to be 'part of the home itself for Fourth Amendment purposes'" *Jardines, Id.* Per *NILI v City of Warren et al* 15-cv-13392 consent decree ₱12 appellee=(EE) city of Warren agreed to obtain an administrative warrant if denied entry" ECF 40 Ex 12. ECF 55 complaint "14. All of the private parties (appellees) Hertz Bros., (EE)-employee Sullivan acted 'under color of state law', acting 'in concert', 'conspiracy' with state actors….' to be engaged in joint action, a private party must be a 'willful participant' with the state actor …in the activity which deprives others of constitutional rights". *Dennis,* 449 US @ 27. A private party is liable …its particular actions are 'inextricably intertwined' with those of the government. *Brunette*, 294 F.3d 1211. Substantial cooperation between the private party and the state must be shown. *Mathis. Pac. Gas & Elec. Co*. 75 F3d 498, 503 An agreement between government and a private party for some-governmental type action can create a state action' …*Rendell-Baker* 457

US at 842-43, "A symbiotic relationship may also arise from the government's exercise of control over the private parties actions" *Brunette*, 294 F3d 1213. The private appellee parties, Hertz Bros., STI Towing Inc. fit this definition of private parties in concert with appellee SCOTT and the other appellees acting in concert.

See Magistrate Report where he correctly states the facts: ECF No. 46, PageID.528 "On July 7, 2021, Judge Chumra of the 37th District Court issued a warrant to tow vehicles on Plaintiff's property. The warrant authorized towing of "inoperable vehicles." (Id. at PageID.93). Two vehicles were towed from the property that day, but according to Plaintiffs (appellants) they were towed before Judge Chumra's order was issued. The same day Defendant Scott wrote a ticket for having an unsafe structure for human habitation at Plaintiff's and Branson's Warren residence. (Id.). Some Defendants removed Plaintiffs' property that included grills, wood, and drainage piping, and charged Plaintiffs $687.50 for "illegally" taking that property. (Id. at PageID.94)."

ECF No. 55, PageID.602   "15 (Appellee) city of Warren is a local government entity that appellee Scott and other appellees work for and is being sued for 'failure to train' its employees. Per ECF 83  Ex 36, p 1-10 show property completely fenced in when cars were towed and personal property taken. Appellee Service Towing Inc =(EE) STI Hertz Bros., employee appellee Sullivan acted in 'concert', 'tandem', 'conspiracy' to tow appellants' vehicles. *Nugent v Spectrum Juv Servs*, 72 F4d 135, 139-140 CA6 'test ..employed to determine when a public entity is entwined in private entity's management or control' *Brentwood Acad v Tenn Secondary Scholl Athletics Ass'n,* 121 SCt 924. In this case… facts of the complaint-same as rewritten herein that appellees STI Towing,    Hertz Bros were called by state actors to tow appellants cars off private property and/or tow "inoperable vehicles", when appellants cars were "operable" order issued after cars towed.  Several days later appellees STI Towing, Hertz Bros, employee appellee Sullivan stalled ANT-T at the appellee STI Towing yard and building per prearranged agreement to have appellee Scott comes and attack ANT-T and do an illegal 'citizens arrest'. See Ex A "THE TROUBLE WITH CITIZEN'S ARREST-DON'T THINK THAT WAY.

See Ex B where appellee city of Warren arresting,  tazing trucker in city of Centerline appellee city of Warren paid $400,000 for "failure to train" warren police arresting citizen "outside jurisdiction" which is identical to appellant-T claim when defendant-appellee Scott does a "citizen's arrest" since appellee Warren police officers were acting "outside their jurisdiction" in neighboring city of Centerline, using false arrest, kidnapping and assault and battery Michigan state law statutes since appellee Warren police had "no jurisdiction" to arrest just as appellee Scott had "no jurisdiction" to citizens arrest appellant-T.   Per the "citizens arrest" claim (EE) Scott, did the exact same actions "citizens arrest" with no authority to perform same as the 2 Warren police officers perfecting arrest "outside jurisdiction". See Ex's B's newspaper articles, and online pg 1-3 "outside of their jurisdiction".

THE TRIAL COURT ERRED TO THE PREJUDICE OF THE APPELLANT-T WHEN IT DID NOT OPINE THAT APPELLANT-T STATED A CLAIM UNDER THE 4, 5, 14 AMENDMENT WHEN ANT-T ALLEGED THAT APPELLEE SCOTT DID A CITIZENS ARREST ON ANT-T AND APPELLEE  SCOTT, NOR (EE) WARREN POLICE, NOR (EE) STI TOWING, (EE) HERTZ BROS., (EE) EMPLOYEE STI TOWING SULLIVAN   DENIED  SAME AS SUPPORTED BY THE RECORD

Per complaint ECF ₱ "34. On 7/21/21 (ANT-T) filed a police report on (EE) Scott for "assault and battery, kidnapping" Incident #21-33784.

ECF 55  Amended Complaint CLAIM NUMBER TWO:

Per facts rewritten herein (EE) Scott violated (ANT) T -United States Constitutional rights to be free from unconstitutional seizure in violation of 4, 5, 14 Amendment when (EE) Scott performed a "citizens arrest" when as a matter of law, (EE) Scott was not allowed to.  (EE) Scott acted in agreement, tandem, conspiracy, actions "inextricably intertwined'. With (EE) Hertz Brothers', (EE) Sandra Hertz, (EE) STI Towing employee (EE) Sullivan to detain, stall (ANT) T at (EE) STI Towing, (overt act) call (EE) Scott who rushed over and do a 'citizens arrest', 'assault and battery', kidnapped, search (ANT) T at (EE) STI Towing garage while (EE) Hertz Bros &/or (EE) Sullivan watched per agreement'".

Per ECF 105 Ex 5,6,7,9 ADMISSIONS (EE) STI Towing, (EE) Hertz Bros., (EE) Sullivan claim they have a contract with (EE) city of Warren that mandates they comply with (EE) city Warren requests…. "Shows 'as to the elements of these 3 theories…nexus test, state compulsion test, and conspiracy framework are all sufficient bases on which to find a private company defendant liable under Sec 1983' *Memphis Tenn Local .. v City of Memphis*, 361 F3d 898, 905.

Per ECF 46 Magistrate's Report, same was correct in surmising the facts at ECF No. 46, PageID.528 "On July 8, 2021, Thrower went to the tow yard to retrieve the vehicles. Defendant Hertz stalled Thrower while Defendant Scott was on his way to the tow yard. When Scott arrived, he threw Thrower against the wall and conducted a citizen's arrest for the unsafe structure-for-habitation ticket. (Id. at PageID.94-95). While restraining him, Scott searched through Thrower's bag. (Id. at PageID.95). Thrower alleges that Scott lacked authority to conduct a citizen's arrest for a misdemeanor charge. Warren police then arrived but did not arrest Scott for kidnapping; instead they arrested Thrower on the misdemeanor housing violation. (Id.)."

Further, the Magistrate was correct when it opined ECF 46 that it did not accept (EE) Scott defense and stated that (EE) Scott cited no law that supported his position.

6. Claims Four and Five Against Defendant Scott Plaintiff Thrower alleges that Scott attempted a citizen's arrest for misdemeanor housing violations on July 8, 2021, and in doing so committed assault, battery, and kidnapping, and violated the Fourth, Fifth, and Fourteenth Amendments. More specifically, Thrower alleges that Scott restrained him, spat on him, and went through his bag. (ECF No. 29, PageID.98). He says that Scott told him during the interaction that he was "doing a citizens arrest." (Id. at PageID.95). Warren police officers arrived at the scene and arrested Plaintiff for housing violations. Defendant Scott argues that the claim should be dismissed because Plaintiff did not show the arrest was made without probable cause and because he did not arrest Plaintiff, the Warren Police Department did. He also argues that the assault, 20 Case 2:23-cv-11597-BRM-CI ECF No. 46, PageID.546 Filed 04/09/24 Page 21 of 25 battery, and kidnapping claims should be dismissed because they consist entirely of legal conclusions. (ECF No. 35, PageID.187-88). To begin with, the undersigned is unconvinced by Scott's argument that the claim fails because he was not the person who ultimately arrested Thrower. The argument is not well-taken because the allegations establish that Scott restrained Plaintiff, telling Plaintiff he was conducting a citizen's arrest, and it can be inferred he held Plaintiff until the Warren police arrived to take Plaintiff into custody. He cites no authority to suggest that he could only be liable for his actions if he took Plaintiff into custody. Plaintiff alleges that Scott's conduct violated both federal and state law. As to any federal violation, Plaintiff's claim of unlawful arrest or seizure is properly analyzed under the Fourth Amendment.

See Graham v. Connor, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims."). False arrest provides the framework closest to the conduct Plaintiff contests. See Tsao v. Dessert Palace, Inc., 698 F.3d 1128, 1142 (9th Cir. 2012) (evaluating claim of unlawful citizens' arrest under framework for Fourth Amendment false arrest after finding citizen arrester to be state actor).", however Magistrate erred by continuing the analysis if the police officer had "probable cause". Appellant Thrower is suing (EE) Scott -not a police officer for "citizens arrest" where "probable cause" is not a factor. Thus Magistrate erred when he continued ECF 46:

"To prevail on a claim of ~~X~~ *(AT EE)* Case 2:23-cv-11597-BRM-CI ECF No. 46, PageID.547 Filed 04/09/24 Page 22 of 25 unlawful arrest, a plaintiff must demonstrate that the officer lacked probable cause to arrest him or her. Halasah v. City of Kirtland, Ohio, 574 F. App'x 624, 629 (6th Cir. 2014); United States v. Torres-Ramos, 536 F.3d 542, 554 (6th Cir. 2008) (unreasonable seizure); Weser v. Goodson, 965 F.3d 507, 513 (6th Cir. 2020) (false arrest). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." Sykes v. Anderson, 625 F.3d 294, 306 (6th Cir. 2010). As Scott noted, Plaintiffs did not allege that the citizens' arrest (or his ultimate arrest by police officers) was affected without probable cause. What is more, Thrower alleges his arrest by the Warren Police Department was pursuant to misdemeanor housing violations, suggesting there was probable cause for the arrest. See Devenpeck v. Alford, 543 U.S. 146, 153, 155 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). In their response brief, Plaintiffs acknowledge that there was a warrant for Plaintiff's arrest for housing violations. (ECF No. 40, PageID.422). Plaintiffs were on notice of the lack of allegations about probable cause in the amended complaint, yet did not seek to amend their complaint. So neither the allegations nor the briefing establishes that he was arrested without probable cause. The undersigned therefore recommends that Thrower's federal claim about the interaction with Scott be dismissed. 22 Case 2:23-cv-11597-BRM-CI ECF No. 46, PageID.548 Filed 04/09/24 Page 23 of 2"

Defendant Robert Scott is supervisor of city of warren mi property and maintenance division...". For a city employee the law states he cannot make a "citizens arrest". There is no weighing if he had "probable cause" as he is not a police officer. 2nd, the Warren Police officers that arrived 10-15 minutes later and observed (D) Scott "physically restraining" (PT) had they been "properly trained" would have observed that there was a felony in the process of kidnapping, assault and battery and should have arrested (D) Scott instead of just arresting (P) Thrower for outstanding misdemeanor warrant. (PT) does not allege that Warren police could not have arrested (PT) in complaint which must be "accepted as true". See ECF 40, INDEX OF EXHIBITS 26 pg 1-2 AFFIDAVIT OF ALBERT THROWER

Yet, magistrate erred when applying the law to these facts and stating (P) Thrower did not state a claim for relief, and that his 4, 5, 14th Amendment rights were violated by the actions of (D) Scott acting in conspiracy with private parties (D) Hertz Brothers, STI, Able Towing LLC to stall (P) Thrower & tip off (D) Scott.

(PT) (EN)
~Trial Court +

OBJECITON TO THE MAGISTATE'S REPORT No. 2

MAGISTRATE ERRED BY STATING PLAINTIFFS' THROWER/NELSON (P-T/N) or (Ps') DID NOT STATE A 4, 5, 14th US Constitution CLAIM WHEN DEFENDANTS' TOWED (Ps') OPERABLE VEHICLES OFF PRIVATE PROPERTY WHERE PLAINTIFFS' WERE RENTING

(Ds') with (D) STI, (D) Scott, (D) Hertz Bros towed 2008 Honda Civic-driven by plaintiff Nelson (PN) 7/7/21. 2011 Silverado driven by (PT) was towed 7/7/21 off private property in violation of 4, 5, 14th AMENDMENT United States Constitution. (PT) ~Trial Court + (EN)

Magistrate erred by claiming (Ps') failed to state a claim because Ps' could not ID who towed cars. Per ECF 29 pg 11 P "56) (D) Scott yelled 'I want the black car towed' that was being driven by (P) Nelson (tenant of 7568 Hudson) and was in Michigan Ascencion hospital having travelled there by ambulance...". Per complaint ECF 29, ECF 40, Ex 26 para 11 Affidavit of (P) Thrower-renter @ 7568 Hudson Ave Warren MI

"11) Warren Property & Maintenance Supervisor ROBERT SCOTT came to 7568 Hudson Ave and was screaming 'I want all vehicles towed'. Service Towing Inc. employee said "I can't get

*...*

Case: 24-2095    Document: 9    Filed: 03/26/2025    Page: 13

"the Honda because it behind the house parked at an angle. If I tow Honda, i will damage it.
Robert Scott-was observed through the basement window and known to affiant, screamed 'I
don't care, I want the Honda towed too....'"

. Per the complaint and RESPONSE TO MOTION TO DISMISS Td 40 PageId.468
AFFIDAVIT (P) Thrower saw (D) Scott-a supervisor directing towing of Silverado & Honda per
ECF 29, ECF 40. (D) STI & Hertz Brother's towed same. The cars were towed, with a tow
truck from (D) STI Towing in a conspiracy – agreement with (D) Scott & other (Ds') off private
property. Magistrate admits 2 cars were "operable" in violation of 37th District Court Judge
Chunra 7/7/21 order to tow "inoperable vehicles"-the same day 7/7/21 of the towing & (Ps")
allege issued AFTER cars towed in CYA order & not served on (Ps') in a meaningful manner as
to give notice to (Ps'). Why were the cars towed off private property?, the (D)'s do not address
why they were "towed off private property". Per ECF 29 AMENDED COMPLAINT same
rewritten herein & ECF 40 RESPONSE TO MOTION TO DISMISS same rewritten herein
magistrate erred by not stating (Ps') stated a claim under 4, 5, 14th Amendment United States
Constitution. (PT) avers under oath he saw (D) Scott tow the cars "through the basement
window known to affiant", and (Ds') STI Towing, Hertz Brothers towed the cars. Thus
magistrate erred when it opined that complaint should be DISMISSED  1) This is what
DISCOVERY IS FOR 2) (Ps') ID'd (D) SCOTT as the person directing that the 2 cars be
towed, the same (D) SCOTT that did "citizen's arrest" on (PT) Objection to Magistrate's Report
No. 1 ECF .

OBJECTION No. 3    Magistrate and Trial Court Erred
When:
The 37th District Court entered order same day 2 cars were towed 7/7/21 without United
States Constitutional notice *Mathews v Eldridge,*  424 U.S. 319 (1976), *Mullane v Central
Hanover Bank & Trust Co.,*

(1950) "Notice must be reasonably calculated under the circumstances to inform interested
parties of a pending action and give them an opportunity to respond. The ECF 40 RESPONSE
TO MOTION TO DISMISS Ex 1 shows 37th District Court Chmura order dated 7/7/21, same
day cars were towed, "IT IS ORDERED TODAY..". Ps' aver that as a matter of law an order
entered 7/7/21 and executed "today" is unconstitutional insufficient notice as a matter of law.

11

Ps' need discover to see who ordered cars towed. Ps' stated in ECF 29 AMENDED
COMPLAINT ECF 40 RESPONSE TO MOTION TO DISMISS they heard (D) Scott ordering
the cars towed and (P) Thrower saw (D) Scott directing police and (D) STI and Hertz Brothers
towing same. See FedR.Civ.P. 26(b) "Parties may obtain discovery regarding any matter no
privileged, which is relevant to the subject matter involved in the pending action...." And that
"this rule 'broadly to encompass any matter that bears on, or that reasonably could lead to other
matter that could bear on, any issue that is or may be in the case" *Oppenheimer Fund. Inc. v
Sanders*, 437 US 340, 351. The magistrate erred because opined that "plaintiffs' are master of
their own complaint" but have not allowed to case to proceed to discovery to identify who called
the (D) STI, (D) Hertz Brothers' tow company and serve ADMISSIONS.

OBJECTION TO THE MAGISTRATE'S REPORT No. 4  *Trial Court Erred*
*by Applying statute of limitations when*
Renters whose eviction was tolled because of covid did not have authority or apparent
authority to give defendant city employees ID's in ECF 29 access to basement apartment of
plaintiffs as magistrate correctly found.

At ECF 46 pg 2 ft 1, the magistrate erred by changing the date the Ps' found out about the illegal
search. "Plaintiffs learned of Defendants' search of the residence on April 23, 2020, ft 1 (Id. At
PageID.91) Ft 1 Plaintiff's wrote "4/23". Ps' aver it was "4/23" when they found about the
illegal search of their apartment. See ECF 29 pg 9 P "45) "(Ps') Thrower, Nelson did not become
aware that (Ds') Scott, Cummins, … had entered basement apartment until 4/23". Although
there was an earlier date alleged 8/21 in complaint where Ps' could have found out about the
illegal entry, *they did not* and actually found out about illegal search 4/23 as complaint states,
thus the magistrate erred by changing the date of (Ps') complaint when (Ps') stated they found
out about the illegal entry into their basement apartment from "4/23" to "April 23, 2020" and the
statute of limitations has to be reapplied under this discovery context, (Ps') averring magistrate
erred per (Ps') ECF 40 RESPONSE TO MOTION TO DISMISS in re statute of limitations same
as if rewritten herein.  Ps' also state magistrate erred that the repeated ENTRY onto (Ps') rented
premises was an ongoing pattern of illegally entering Ps' rented premises that extended statute of
limitations as set forth in ECF 40.

/2

OBJECTION No. 8

(Ps') OBJECT TO MAGISTRATE'S REPORT BECAUSE 1) DID NOT
ADDRESS THE "CITIZEN'S ARREST    " AGAINST (D) WARREN, MI
PROPERTY AND MAINTENANCE EMPLOYEE ROBERT SCOTT, IN
TERMS OF THE 4, 14th AMENDMENT T US CONSTITUTIONAL
VIOLATION 2) DID NOT ADDRESS (D) SCOTT, (D) PROPERTY &
MAINTENANCE EMPLOYEE TOWING "OPERABLE VEHICLES" OFF
PRIVATE PROPERTY WITHOUT PROBABLE CAUSE IN TERMS OF 4, 5,
14th AMENDMENT US CONSTITUTION

38

OBJECTION No. 9

OBJECTION TO MAGISTRATE REPORT SINCE ERRED BY NOT OPINING
THAT ECF 29 IS THE OPERATIVE COMPLAINT, SAME AS IF REWRITTEN
HEREIN AS ECF 55 3rd AMENDED COMPLAINT WAS FILED OVER
OBJECTION

If a complaint sets forth facts that must be accepted as true, ECF 29, 2nd
Amended Complaint same as if rewritten herein, the magistrate erred by not
proceeding on that complaint.

OBJECTION No. 9: *Trial Court & Magistrate Erred when*

OBJECTION TO MAGISTRATE REPORT BECAUSE (Ps') SET FORTH
FACTS IN COMPLAINT ECF #29, ECF *stated a claim*

OBJECTION TO THE MAGISTRATE'S REPORT No. 10

Magistrate erred by not stating that (D) private parties, (D) Hertz Bros., STI

Towing Sullivan acted in conspiracy with "state officials", (D) property &

maintenance supervisor Scott, in A) towing 2 cars, 7/7/21, and B) scheming the

"citizen's arrest" of (P) Thrower @ STI Service Inc with et al., (Ds'), per facts in

ECF 29, 55 same as if rewritten herein.

See ECF 67 Ex's 1-40 same as if attached hereto in support of objection to

magistrate's report, *and this brief.*

,13

The facts in this complaint deal with 2 different cars towed=Honda, Silverado towed on 7/7/21, one year and 2 months after facts in case *Nelson v Service Towing Inc.*, Case 22-cv-10918 in re incident of illegal search of Ps' apartment and a citizen's arrest 7/8/21 @ STI tow yard which magistrate correctly found were different.

OBJECTION TO THE MAGISTRATE's report No. 1

~~MAGISTRATE~~ Trial Court & ERRED BY STATING PLAINTIFF THROWER= (PT) DID NOT STATE A 4TH AMENDMENT CLAIM AGAINST ROBERT SCOTT-Warren Property & Maintenance supervisor WHEN HE DID A CITIZENS ARREST AT SERVICE TOWING INC=STI TOW YARD 7/8/21 working in agreement with (D) STI Towing, Hertz Bros., DOE-Sullivan employee in either ECF 29 2nd Amended Complaint or ECF 55 3rd Amended Complaint

Per 2nd Amended complaint ECF 29 pg 12, P "67. On 7/8/21 (P) Thrower went to tow yard to retrieve Silverado @ 9:15 AM.

68. (D) Doe Hertz brother stalled (P) Thrower and (D) Hertz brother(s) called (D) Scott, Property and Maintenance Supervisor per earlier agreement who rushed over to (STI).

69. 9.40 AM (D) Scott #32 (deceased) arrived at (D) STI...6006 Rinke Ave Warren MI and threw (P) Thrower against the wall (actually he restrained Thrower physically in the center right of the STI garage where (D) Doe Hertz Brother or (D) Sullivan told (P) Thrower to wait) physically restraining (P) Thrower inside STI garage (D) Scott yelling @ (P) Thrower 'there was a warrant out for housing violations (allegedly) issued 7/7/21'". See ECF 40, INDEX OF EXHIBITS 26 pg 1-2 AFFIDAVIT OF ALBERT THROWER, Ex 25 pg 1-3 Affidavit of Elizabeth Nelson (two affidavits).

70. "(P) Thrower yelled at (D) Scott 'what are you doing'? (D) Scott replied 'doing a citizens arrest'. (P) told (D) SCOTT that under Michigan law (p 13) he could (NOT) sic perform a citizen's arrest. (P) Thrower proceeded to call 911 to report crime of Kidnapping in process under MI law. (D) Scott knocked (P) Thrower 313 line out of his hand and knocked (P) Thrower glasses off, breaking them committing felony 'assault and battery'. (P) Thrower told (D) Scott #32 "you are assaulting me and doing battery on me", (D) Scott ~~(deceased) estate substituted)~~ ⟨EN⟩

*14*

Case: 24-2095     Document: 9     Filed: 03/26/2025     Page: 18

roughing (P) Thrower up and holding his hands behind his back." (D) **Scott** is an x-Warren police officer of 28 years, (obit) and apparently still thinks he was a police officer.

*Appellee Scott never denied Allegations.* (KM EN)

71. "While restraining (P) Thrower (D) Scott #32 searched (P) Thrower **Aldi's** bag with personal property ....performing illegal search and seizure under Michigan Constitution, United States Constitution 4, 5, 14th Amendment including illegal seizure by **physically restraining (P) Thrower**."

72. "Under Michigan law (D) Scott did not have authority to do a **citizen's arrest** for misdemeanor warrant. (P) Thrower told (D) Scott he did not have legal **authority to restrain (P) Thrower**, to which (D) Scott #32 responded, 'I am doing a citizen's arrest'. Which (P) Thrower informed (D) Scott 'he did not have authority to perform a citizen's arrest under MI law per facts.'"

73. "(P) Thrower phone was knocked out of his hand, and he was forcibly **detained and injured** ... by (D) Scott."

74. "Covid was still an issue during this alleged citizen's arrest 7/8/21 **and (D)** Scott was yelling @ (P) Thrower and spit was going on (P) Thrower from (D) Scott."

75. After about 10-15 minutes of (P) Thrower being physically restrained by (D) Scott Warren *(P) (ANT)* police arrived (witnessing (D) Scott physically restraining (P) Thrower).

76. Warren police witnessed the felony in process of kidnapping (P) ..Thrower and did not **arrest** (D) Scott but rather arrested (P) Thrower for alleged misdemeanor **housing** violations."

Magistrate erred because it appears that since Warren police ultimately **arrested** (P) Thrower that (D) Scott did not perform a "citizen's arrest" as he claimed he did **to (P)** Thrower.

(D) Scott having ample to time to respond under oath does not deny **this** assault and citizen's arrest took place, nor have Warren police officer's arrived who witnessed same, or (D) Hertz Bros (Ds') or employee Sullivan.

*15*

77) "Under Michigan Code of Criminal Procedures Act 175 of 1927, **764.16** Arrest by Private Persons... Section 16

- o   For a felony committed in the private person's presence
- o   ... committed felony not in private person's presence
- o   If the private person is summoned by a peace officer to assist the officer....(d) ..." ECF  46 pg 3, P 2, magistrate correctly states fact: "July 8, 2021 Thrower went to the tow yard to retrieve the vehicles... (D) Hertz (or (D)=Doe employee Sullivan-who was mistaken as one of the (Ds') Hertz Brothers stalled Thrower while (D) Scott **was** on his way to the tow yard (after being called by (D) Hertz Bros per agreement). **When** (D) Scott arrived, he threw (P) Thrower against the wall and conducted a citizen's arrest for unsafe structure-for-habitation ticket(issued the day before 7/7/21 & not served on (P) Thrower) (Id. At PageID,94-95) (as noted in (Ps') brief tenant Branson had her eviction stayed because of covid, and then evictions were tolled because of covid-later (D) Scott testified at 8/21 eviction hearing that Branson should be allowed to stay at Hudson property  for free while (D) Scott helped her find a place-to 37th District Court's Judge Chuma's dismay). While restraining ((P) Thrower), (D) Scott searched through Thrower's bag (and assault and battery (P) Thrower per ECF 29 pg 12-13 complaint "which must be accepted as true" quoted *supra*. Thrower alleges that Scott lacked authority to conduct a citizen's arrest for a misdemeanor charge. Warren police then arrived but did not arrest Scott for kidnapping; instead, they arrested  (P) Thrower on the misdemeanor housing violation." CLAIM 4 in ECF 29 Amended complaint @ pg 16

Magistrate was correct by holding (Ps') complaint to a lesser pro'se standard per *Haines v Kerner*, 404 US 519, 520. @ pg 5 P 2.

Trial Court And
Magistrate erred by not addressing law &/or applying law in re citizen's arrest. Pg 22 ECF 46 PageID 547, as to probable cause for (D) Scott to do a citizen's **arrest-restrain** (P) –Appellant Thrower, "assault & battery on (P) Thrower per ECF 25 Amended complaint quoted supra. (D) Scott is not a police officer, magistrate using "The officer subjective reason for making the arrest ..." *Devenpeck v Alford*, 543 US 146, 153. As stated in ECF Amended complaint 29 (D) Scott is a supervisor with Warren Property and Maintenance. **(Ps')** can find no law,

16

nor has magistrate cited any that an employee of Warren property and maintenance can do a "citizen's arrest" as (D) Scott claimed he did, and even if was not a "citizen's arrest" as (D) Scott claimed it was attacking (P) Thrower restraining (P) Thrower, knocking Thrower's glasses off, knocking his phone out of his hand, spit in (P) Thrower during covid, and physically holding him and restraining (PT) until Warren police arrived "10-15 minutes later", he being a public official, city of Warren employee under Michigan law was not allowed to do same. Using a police case as to whether a *police had probable cause to arrest* … *Devenpeck Id.*, is not on point. "Held: *1. A* warrantless arrest by a law officer *is reasonable under the Fourth Amendment if, given the facts known to the officer, there is probable cause to believe that a crime has been or is being committed. The Ninth Circuit's additional limitation—that the offense establishing probable cause must be "closely related" to, and based on the same conduct as, the offense the arresting officer identifies at the time of arrest—is inconsistent with this Court's precedent, which holds that an arresting officer's state of mind (except for facts that he knows) is irrelevant to probable cause, see Whren* v. *United States,* 517 U. S. 806, 812–815. The "closely related offense" rule is also condemned by its perverse consequences: it will not eliminate sham arrests but will cause officers to cease providing reasons for arrest, or to cite every class of offense for which probable cause could conceivably exist. Pp. 5–9."

"Officer Joi Haner of the Washington State Patrol, one of the two petitioners here, … 333 F. 3d, at 974. .. On the basis of this information, Haner radioed his supervisor, Sergeant Gerald Devenpeck," *Devenpeck v Alford, Id*

As noted, and clearly in complaint ECF 29, (D) Scott is the supervisor or City of Warren Property & Maintenance", not "a police officer", so *Devenpeck v Alford, Id.,* is not relevant. The city of Warren failed to train (D) Scott and "train" him that he is "(not) a law officer" as he was for 28 yrs (Scott obit). The city of Warren is liable for it's failure to train policy" and ample case and newspaper articles set forth in Ps' ECF 40 RESPONSE TO DEFENDANTS MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT INSTANTER same as if rewritten herein including exhibits 1-35.

The magistrate states @ pg 22 para 2 "As Scott noted, Plaintiffs did not allege that the citizens arrest … was affected without probable cause…" . Scott, per ECF 29 pg 6 P"15)

17

"One theory that civil rights attorneys have used to establish Sec 1983 liability is a ratification theory. Under a ratification theory, the (appellant-plaintiffs) argues that because the municipality subsequently approved of conduct by its officials that deprived the (appellants) of his Constitutional rights, the municipality should be liable under Sec 1983. In City of St Louis v Praprotnik, 4 ...Supreme Court accepted this theory: when a final policy maker 'approved a subordinate's decision and the basis for it" 485 US 112, 127. Appellants aver that (EE) STI Towing admission of tow contract, with (EE) city of Warren, "approved of the conduct by its officials that deprived (appellants) of their Constitutional rights, .. municipality should be liable under Sec 1983" Id.

Further per Monell v Dept of Social Services of the city of New York, infra which created ... for civil rights (appellants) to seek money damages against a city." Pembaur v City of Cincinnati, infra "Monell..recovery..municipality is limited to acts.. 'municipality '- is, acts which the municipality has officially sanctioned ...".  Appellants allege that (EE) city of Warren has an unconstitutional policy.  These policies may be written or unwritten, so long as ... attributed to a 'policymaker'. Warren has an unconstitutional policy, for 1) towing cars  2) attacking citizens with "no jurisdiction", i.e., (ANT) T citizens arrest be (EE) Scott. See Ex B: "Two cops fired, settlement paid for misconduct just revealed", arresting trucker "outside jurisdiction," tazing same. Policymakers... elected officials or those defined as policymakers by state law.  This provides a standard of causation: if a subordinate employee is the party responsible.. deprivation of rights, the local entity may only be responsible if a certain policy was the 'moving force' behind their actions. This but-for standard .. 2nd, a local entity may be liable ... Sec 1983 for unconstitutional customs and practices .. advantageous to a civil rights plaintiff when no policymaker can be identified ... 3) if a policymaker delegates authority to a subordinate employee .. or approves of unconstitutional actions, ... act can be said to be 'of municipality' by adoption. 4) civil rights plaintiff may allege 'deliberate indifference' ... applies to a single incident type injustices and concerns the city's .. failure to hire, train, or supervise its employees. Deliberate indifference liability attaches when policymakers of ... local entity are aware .. risk and grossly neglect to address it." Appellants alleges .. final policymaker acted under color of state law... Monell liability Id., 436 US 658, 691. Such liability attach when official or employee who caused a constitutional violation was acting as 'final policymaker'" Lytle v Carl, 382 F3d

*18*

973, 981.  This is the 2nd time cars were towed—towed a year earlier 5/1/20 towing different cars.

Case: 24-2095    Document: 9    Filed: 03/26/2025    Page: 23

Appellants allege that (EE) Scott, ((EE) STI Towing, Hertz Bros., (EE) Randy Sullivan acted in conspiracy with the other individual defendants to violate Plaintiff's constitutional rights.  (ECF No. 29, PageID.87).  To state a conspiracy claim under § 1983, a plaintiff must show, not merely conclude: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his or her civil rights.  *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6thCir. 1985).  Case 2:23-cv-11597-BRM-CI   ECF No. 46, PageID.536   Filed 04/09/24 Page 11 of 25. 1) Appellees were "deprived of property without notice and an opportunity to be heard in a meaningful time and a meaningful  manner" Fuentes v Shevin, 92 SCt 1983.., i.e., cars and personal property. "It is undisputed…use of one's vehicle is a substantial property interest, …owner is entitle to due process" Bell v Burson, 402 US 535, 539  Several "overt acts" are 1) coming on the private property to tow the cars, 2) Telephone call to come and tow the cars 7/7/21 and 7/8/21 (EE) STI, Hertz Bros employee Sullivan to call (EE) Scott to do "citizens arrest" on (ANT-T). MI Code L Sec 257.252a(2)(a) statute Warren Property Maintenance Supervisor  (EE) Scott has "no authority" to tow cars off private property.  (EE) Hertz Bros., STI Towing, employee Sullivan entered the conspiracy, meeting of the minds with state actors to violate appellants US Constitutional rights when 1) Towed cars off private property 2)  per facts of complaint stalled (EE) T at STI Towing and called (EE) Scott per prearranged agreement 7/8/21, called (EE) Scott who effectuated a "citizens arrest" on (ANT)-T restraining him until police arrived. "that the nexus test requires a sufficient close relationship (i.e. through state regulation or contract (which (EE) STI Towing, Hertz Bros., admit they have with (EE) city of Warren)

20

between the state actor and the private actor so that the action may be attributed to the state."
Robertson et al v Breakthrough Towing et al. @ 12". "Private parties may also be liable under
Sec 1983 if they 'willfully participated in joint actions with state agents' by joining a civil
conspiracy with state officials" Memphis Tenn Area Loc., Am Postal Workers Union, AFL-CIO v
City of Memphis, 361 F3d 898, 905 CA6.   Per facts of complaint, ECF 29, 55, there are two
basis of "joining a civil conspiracy with state officials", Id., 1st when towing the cars off private
property 2) stalling (ANT)-T the next day at (EE) STI Tow yard by (EE) Sullivan and (EE) Hertz
Bros., calling (EE) Scott to perform a "citizens arrest". "knowingly allowed the seizure.. in
reckless regard of statute requirements'… violated (appellants) clearly established 4th
Amendment right to be free from unreasonable seizure' Livingston, 151 FApp'x at 476.  In re 1)
towing cars, taking personal property 2) Stalling (ANT)-T at (EE) STI Tow yard by (EE) STI
Hertz Bros and employee (EE) Sullivan. "maybe subject to liability under section 1983 where
they 'act jointly' or conspire with state government officials" Brentwood Acad. v Tenn
Secondary School Ath Ass'n, 531 US 288, 296, Tower v Glover, 467 US 914, 919, Dennis v
Sparks, 449 US 24, 27, "finding liability under the criminal law analogue of section 1983, 18
USC Sec 242, 'private individuals acting jointly with state officers engage in conduct 'under
color' of state law." In re 1) towing cars off private property 2) scheming plan with (EE) Scott to
stall (ANT)-T at (EE) STI  Towing with private parties (EE) Hertz Bros., (EE) employee
Sullivan and calling (EE) Scott to perform a "citizens arrest".   "1983 civil conspiracy occurs
where 'private party has conspired with state officials to violate constitutional rights, and 3) an
overt act was committed" Revis v Meldrum, 489 F3d 273, 290 CA6

The (EE) city of Warren is liable for "failure to train" (EE) Scott with (ANTS) showing
"other acts" ECF 83 EX 29, 6/24/23 "warren police officer caught on video punching jail

prisoner" pg 1-5. Per Ex C pg 1-4 update "Ex-Warren cop who assaulted city lockup detainee wanted him to apologize", and shows him pleading guilty. Ex B pgs. 1-3 "Two cops fired, settlement paid for misconduct just revealed", where (EE) Warren police arrested and tazed trucker "outside their jurisdiction" in city of Centerline, just as (EE) Scott had no authority to do 'citizens arrest" on (ANT)-T.

Court has jurisdiction. Carmen Auto Sales III Inc. v city of Detroit, 2018 WL 1326295 p 3-4, "Congress-not state or state legislature-controls federal court jurisdiction—nothing in Sec 257.252..limits a federal court to hear federal claims" Robertson et al v Breakthrough et al., supra @ 11. Per Nugent v Spectrum Juv Servs., 72 F4d 135. 139-140 CA6 'test..employed to determine when a private entity may qualify as a state actor, including entwined test.. private entity ((EE) STI Towing, (EE) Hertz Bros. (EE) employee Sullivan) is entwined in private entity's management or control'" Brentwood Acad v Tenn Sec school Athletic Ass'n 121 SCt 924. In case sub judice, the (EE) STI Tow yard admit the "existence of contract" to 1) Tow cars 2) does not include stalling peoples who cars were towed and call (EE) Scott so that (EE) Scott can perform a "citizens arrest". See ECF 105 Ex 5,6,7,9 ADMISSIONS in re contract, "mandates they comply with city of Warren employee requests…". This "comply with city of (EE) Warren requests" cannot include engaging in citizens arrests. "Shows 'as to the the elements of these three theories… nexus test, state compulsion test, and conspiracy framework are all sufficient bases on which to find private company defendants liable under Section 1983" Memphis Tenn Local v city of Memphis, 361 F3d 898, 905.

WHEREFORE the appellants pray that this case will be reversed and remanded on the issue of (EE) Scott violating (ANT)-T 4, 14th Amendment rights when he performed a "citizens arrest", as articulated by Magistrate ECF 46 "6. Claims Four and Five Against Defendant Scott

Plaintiff Thrower alleges that Scott attempted a citizen's arrest for misdemeanor housing violations on July 8, 2021, and in doing so committed assault, battery, and kidnapping, and violated the Fourth, Fifth, and Fourteenth Amendments.  More specifically, Thrower alleges that Scott restrained him, spat on him, and went through his bag.  (ECF No. 29, PageID.98).  He says that Scott told him during the interaction that he was "doing a citizens' arrest."  (*Id.* at PageID.95).  Warren police officers arrived at the scene and arrested Plaintiff (ANT-T) for housing violations.  "Whether an official is a policymaker for Monell purposes is a question of state law for the court", City of St Louis v Praprotnik, 485 US 112, 113. "A policy is a deliberate choice to follow a course of action made from among various alternatives by ... official responsible for establishing final policy" Appellants' seek to establish municipal liability under this theory... demonstrate that an action of final policymaker was the moving force' behind the constitutional violations (appellants) suffered". "To meet this requirement (appellants) show both causation-in-fact & proximate causation." Id. A municipality may be liable for the acts  of a final policymaker if these acts caused a constitutional violation, even if the constitutional violation occurred only once." Pembauer v City of Cinci., 475 US 469, 478... municipality may also be liable if a policymaker official fully ...".  Appellees aver (EE) City of Warren liable of under this theory.

Defendant Scott argues that the claim should be dismissed because Plaintiff did not show the arrest was made without probable cause and because he did not arrest Plaintiff, the Warren Police Department did.  He also argues that the assault, Case 2:23-cv-11597-BRM-CI   ECF No. 46, PageID.546   Filed 04/09/24   Page 21 of 25

battery, and kidnapping claims should be dismissed because they consist entirely of legal conclusions.  (ECF No. 35, PageID.187-88).

23

*To begin with, the undersigned is unconvinced by Scott's argument that the claim fails because he was not the person who ultimately arrested Thrower.  The argument is not well-taken because the allegations establish that Scott restrained Plaintiff, telling Plaintiff he was conducting a citizen's arrest, and it can be inferred he held Plaintiff until the Warren police arrived to take Plaintiff into custody.  He cites no authority to suggest that he could only be liable for his actions if he took Plaintiff into custody.*

Plaintiff alleges that Scott's conduct violated both federal and state law.  As to any federal violation, Plaintiff's claim of unlawful arrest or seizure is properly analyzed under the Fourth Amendment.  *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

False arrest provides the framework closest to the conduct Plaintiff contests. *See Tsao v. Dessert Palace, Inc.*, 698 F.3d 1128, 1142 (9th Cir. 2012) (evaluating claim of unlawful citizens' arrest under framework for Fourth Amendment false arrest after finding citizen arrester to be state actor)." Case 2:23-cv-11597-BRM-CI   ECF No. 46, PageID.548   Filed 04/09/24   Page 22 of 25, and other grounds.

24

Case: 24-2095     Document: 9     Filed: 03/26/2025     Page: 28

Respectfully submitted,

*Elizabeth Nelson*
Elizabeth Nelson,  pro'se

Albert Thrower pro'se

## CERTIFICATE OF SERVICE

Per 28 USC § 1746 under the penalty of perjury

A copy of the above brief has been filed on all the defendants through their attorneys this 3/19/25 US mail postage prepaid to: and deposited with U.S. Mail Addressed to:

Mark Straetmans/ Rachel Selina  255 E Brown St #320 Birmingham, MI

48009  tel  2486459680

mstraetmans@berrymoorman.com

rselina@berrymoorman.com

Jenifer Mead     PO Box 806042 St Clair Shores, MI 48080   tel
3134851250

meadjenn@hotmail.com

Law Offices of Thomas H. Stidham. 1401 W Fort St. Rm 1006. Detroit, MI 48233.
Telephone: (248) 303-0306. Fax: (313) 832-7661.

Tsstidham@hotmail.com

Albert Thrower pro se     Elizabeth Nelson pro se

25

*Same as if Attached Hereto.*

---

## INDEX OF EXHIBITS

EXHIBIT 1   Judge Chmura 7/7/21 Order 37th District Court Warren

EXHIBIT 2   Lease: PN=Plaintiff Elizabeth Nelson

EXHIBIT 3   Lease: PT=Plaintiff Thrower

EXHIBIT 4   8/1/21 Menards Mower Receipt

EXHIBIT 5   STI 2008 Honda Receipt $330 dated 7/7/21

EXHIBIT 6   STI 2011 Silverado Receipt dated 7/7/21

EXHIBIT 7   Regal Tire Receipt dated 7/16/21 "towed in"- flat tire @ STI Tow Yard $75

EXHIBIT 8   Pic (D) Mayor Fouts, (D) Robert Scott

EXHIBIT 9 p 1-2   3/11/20 pic of furnace taken after illegal entry into (Ps') basement apartment

EXHIBIT 10 p 1-3   3/11/20 pic in (Ps') basement apartment after illegal entry

EXHIBIT 11 p 1-4   3/11/20 pic (Ps') basement apartment after illegal entry

EXHIBIT 12   NELL 2011v City of Warren, EDMI class action

EXHIBIT 13   7/14/21 Warren Weekly "Warren tracks down 'bad landlord'", "Warren Mayor (D) Jim Fouts said".

EXHIBIT 14   Mail for (P) Elizabeth Nelson to 7568 Hudson Ave Warren MI 48091

EXHIBIT 15   "Fire Pit ordinance stands in Warren", dated 5/12/21, yet city (Ds') take (Ps') grill 7/7/21, $75

EXHIBIT 16   List of Expenses incurred so far as of 11/24/23

EXHIBIT 17   (PN) Driver's License showing 7568 Hudson Ave Warren MI 48091

EXHIBIT 18   Photo at (D) STI Tow yard (PN) Honda "blight" on windshield

EXHIBIT 19   Mower @ scrapyard-since (Ds') threw upside down in (PT) truck

EXHIBIT 20   (D) City of Warren bill for unidentified work 3/24/20 during covid,

---

EXHIBIT 21   (PN) Honda @ Speedway Gas station after removal from STI tow yard-shows "operable"

Exhibit 22   Hanson v Dwyer et al., EDMI Case #11-13587, shows false arrest-not training officers, "pattern"

Exhibit 23   March 2022 Warren Flyer, (D) Fouts, "Prepared not Scared"

Exhibit 24 pg 1-2 (D) Mayor Fouts, Press Release -references "State of the City reception June 24, 2021", getting city employees fired up which led to (D) Scott attacking (PT) @ STI Tow yard

Exhibit 25 pg 1-3 Affidavit of Elizabeth Nelson (two affidavits)

Exhibit 26 pg 1-2 Affidavit of Albert Thrower

Exhibit 27 pg 1-13 Agreement spells out that Warren Police Commissioner Dwyer is "policymaker"

Exhibit 28 PRESIDENT TRUMP CORONAVIRUS GUIDELINES 3/16/20

Exhibit 29 Pic of (PT) 2011 Silverado towed 7/7/21 pg 1-2 — *Shows Gate*

Exhibit 30 2-6-20, amended 32 pages. 3-10-20 Michigan Governor Whitmer "covid emergency order"

Exhibit 31   Cleveland MetroHealth Cancer documentation 3/20 for (P) Thrower

*Gate-* Exhibit 32   Picture SIDE DOOR where (Ds') entered 7568 Hudson Ave 2 pages

Exhibit 33   Deed, and sale lot transfer "St Anthony the Great Monastery"

Exhibit 34   Deed shows Saint Anthony Monastery owns property

Exhibit 35   "Other acts Warren police", shows "pattern", "This video sickening"

*Ex 36 pg 1-9: pics showing  ECF 40;
yard enclosed and pg 1 Ex 29
Ex 37 pg Tickets    GATE
Ex 38 (PT) Affidavit    Ex 32
Ex 39 (PN) Affidavit    Gate
Ex 40: No Trespassing Sign*



POLITICS & THE LAW

# CONCEALEDCARRY

MAGAZINE

$9.98

RESPONSIBLY ARMED AMERICANS

JULY 2021 VOLUME 18 ISSUE 5

RALPH FRIEDMAN
NYPD's Most Decorated Detective
SEE PAGE 70

STREET
WARRIOR

STR
JUST

Watch the Video at
kLeather.com
88-661-5579

USCCA
www.USCCA.com

Case: 24-2095   Document: 9   Filed: 03/26/2025   Page: 30

Ex A p 1

Case: 24-2096    Document: 3    Filed: 03/26/2025    Page: 31

## THE TROUBLE WITH CITIZEN'S ARRESTS

# DON'T THINK THAT WAY

**T**here is a certain subset of the gun culture that thinks of itself as the backup to the local police. Any moral and courageous person would go to the aid of a police officer in trouble, and self-defense laws permit a defender to shoot to save the life of a law enforcement officer if that officer's life is in danger. However, the subset at issue here is the group of people who believe that when the police are not around, they ARE the police. Their justification is the "citizen's arrest" statute. These individuals believe that they can simply invoke that statute to arrest and detain anyone they suspect of committing a crime.

Well, that is not the case.

Most of these folks have never actually read the citizen's arrest statute in their home jurisdictions. Many states have such a statute, and, for the most part, these statutes are similar in important ways. Generally, the laws allow the arrest of an individual for an offense committed in the presence of a citizen and grant that citizen permission to detain a felon even if the felony was not committed in the presence of the person making the arrest. Some laws even grant the right to break and enter to accomplish that arrest (though not many).[1]

It sounds simple, right? Just announce the arrest. And if the person resists by running into his or her house, break down the door and give pursuit. It worked for Chuck Connors in *The Rifleman*, after all.

Think again. TV is not reality.

### RELICS OF THE PAST

There's other statutes in most states that grant protection to people in their homes. Those statutes might be important to think about first before kicking in someone's door. As an example, Alabama's Criminal Code § 13A-3-23 provides that a person may use lethal force when someone is "in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered, a dwelling, residence, business property or occupied vehicle..." You may go in thinking you're a hero, but you could easily go out on a gurney or in a body bag.

The fact is that citizen's arrest laws are an anachronism.

They date back to the time before telephones, 911 systems and radio-equipped patrol cars. They were useful when the sheriff was an hour away and came by horseback.

In some respects, they remain useful. If you catch your neighbor's kid in your garage stealing your power tools and apply this law without violence or threat of violence, it can sometimes work out. Junior learns a lesson, and you no longer have to go to your neighbor's Fourth of July barbecue. But where you try to subdue a criminal with a firearm — particularly an unarmed criminal — that's where things get dicey.

### 101 THINGS THAT COULD GO WRONG

People get into trouble not for the arrest so much as for pointing a firearm at a suspect. Police tend to dislike police impersonators and are unlikely to be impressed by what they might reasonably see as vigilante action. Technically, if the criminal is not threatening your life and is running away, he or she is not a danger to you. Similarly, if you point a gun at him or her, you are a danger to that person, and you might well wind up being charged with assault with a deadly weapon. But, of course, that assumes the person you point the weapon at actually is the person responsible for a crime. You take a significant risk during a citizen's arrest by assuming that you are acting 100 percent in the right.

You're probably thinking that police don't have to be 100 percent right. Why should a private citizen be held to such a high standard? Because, in this limited instance, that policy makes perfect sense.

First, as a private citizen, you likely have little or no training in criminal law or criminal procedure. You don't have backup, and hence you are more likely to resort to violence than an officer who can simply surround the suspect with other officers and convince him or her to surrender peacefully.

Without experience in handling criminal matters, you may lack the judgment necessary to make lawful decisions. Someone coming out of a business with a gun and the burglar alarm sounding in the background might well be an armed robber. But it could also be the owner

Ex
A
P2

checking the area or an undercover police officer. Maybe that person is just a private citizen like you who happened to be armed and in the store. A law partner of mine used to say that "assume" was the mother of all lawsuits.

Police and sheriff's deputies are cloaked with official immunity for their acts principally because they receive hundreds of hours of training and have tactical and communications resources private citizens do not have. Police are likely to know the age, height and weight of a thieving felon as well as the clothing he or she is wearing. You are unlikely to have that information. Police have the training, and hopefully the discipline, to engage a suspect with both caution and reasonable force. Police have training in field interrogation. They also know what to look for in behavior as well as where weapons might be found on a suspect's person and in his or her clothing. Their training, the mission the public has given them and the general belief that they honor their oath to the Constitution provide them with forgiveness if they take a suspect out of a car at gunpoint and he turns out to be the church pastor or a 19-year-old bible salesman.

Private citizens have no such protection. Suppose you make the assumption that the person driving an identically colored car that you saw leaving the scene of a convenience store robbery is the perpetrator. Based on your assumption, you follow the vehicle. When he or she stops and gets out of the car to go into his or her house, you jump out of your car, scream "Stop!" and point your weapon at the individual. You order him or her to get down on the ground, and call police. Congratulations, that 18-year-old bible salesman now has a cause of action against you for false arrest or false imprisonment.

In the process of taking the person down to the ground, and he sustained injuries. Guess who'll be paying for medical care? And if you make the massive mistake of securing him or her with the zip ties you keep in the car for just such an occasion and put the suspected perpetrator in the back of your car to wait for law enforcement, congratulations again: Now you face charges for kidnapping.[2]

Even assuming you are in the right and actually detained a felon, your problems are far from over. If the felon is not in possession of a deadly weapon and isn't in the mood to play nice, he or she can simply advance on you. The individual isn't armed. He or she has no weapon visible. You tell the person to stay put, but he or she continues to advance. What are you going to do? Is he or she going to try to take your firearm away from you? Perhaps, but why did you even put yourself in this position to begin with?

Of course, on television (where most people get their police and legal training), the perp in question meekly surrenders. Entertainment rarely parallels real life. Watch a few YouTube videos of actual arrests and you'll quickly learn that even unarmed felons can still be quite difficult to control. And if that predator thinks for one millisecond you'll hesitate to pull the trigger, you can bet that individual is coming after you. He or she will get your gun, use it on you and go on to commit more felonies with your firearm. Congratulations: Now you've either been pistol-whipped or shot anywhere from once to several times, and you've also armed a criminal fugitive.

## WHEN REALITY HITS

The law is forgiving of officers and not very forgiving of private citizens. A police officer who fires at a suspect and whose stray round hits a passerby is afforded immunity from both prosecution and legal liability. The private citizen is not. While you must be accountable for every round fired (and must at all times be aware of your backstop), police are not held to that same standard. That doesn't mean they don't think about those things or try to minimize their impact during an incident. My experience analyzing police use-of-force cases suggests otherwise. It simply means that a commission to be a police officer carries with it an understanding that when your life is in danger and someone is shooting at you simply because you're wearing a badge, some mistakes are reasonable even when they are tragic.

Let's suppose, however, that you use your firearm to detain a robbery suspect who turns out to actually be the robber. The future felon is turned over to law enforcement, pleads guilty and is convicted. The judge gives him three years in the state penitentiary. Even better, police do not question your use of force. Certainly, that must mean you have no worries about what you did. Sadly, that is not the case. You are now going to face the prospect of endless "recreational litigation."

Every day, all across this country, prisoners sue in state and federal courts. It doesn't matter if they can win or not; it simply is a way to get back at the legal system by filing lawsuits that, in most cases, they have zero chance of winning.

A lawyer friend of mine was ordered by the federal court to represent a felon who sued the prison where he was detained for failure to provide him with low-fat foods and give him a special diet. Even though the claim had no merit (the felon's commissary bill included charges for Twinkies and Kit Kat bars), he was still

## A JUDGE WEIGHED IN 60 YEARS AGO

On Oct. 19, 1958, a man submitted a question to Washington, D.C.'s *Evening Star* for Judge Samuel S. Leibowitz, a justice of the New York State Supreme Court, inquiring if a private citizen can make an arrest.

"Most states have a law providing that a private citizen may arrest another ... Unfortunately, these do-it-yourself arrests seldom run smoothly," Leibowitz replied. "The main hitch is, of course, that a safe-cracker caught in the act is not likely to utter a good-natured, 'Ah, shucks,' throw away his burglar tools and submit to your announcement that he's 'under arrest.'"

"Certainly you are on far safer ground from any point of view if you summon a policeman to do your arresting for you," the judge continued. "The policeman is not only armed, but he is likely to have a much more reliable legal weapon than you have ... As a private citizen intent on being a proxy policeman, you will have to take the consequences of making a false arrest. Should your 'suspect' turn out to be innocent, you may end up in court — defendant in a lawsuit. So despite your 'rights,' I advise allowing the local constabulary to make its own arrests."

— *Frank Jastrzembski, Associate Editor*



entitled to a jury trial. For two days, the felon and the state put on evidence, and the case was sent to the jury at 10 a.m. The jury didn't even stay for lunch. They denied the claim in about 20 minutes. And most of that time was taken up deciding who was going to be the foreperson. When a prisoner sues the state, your tax dollars pay for the lawyer. But can the felon sue you from jail?

Yes, the convicted felon can sue you for assault, even from jail. In tort law, an assault occurs when someone, acting intentionally, causes the reasonable apprehension of an immediate harmful or offensive contact. Pointing a gun at a person certainly puts him or her in reasonable fear of harmful contact. You may think the claim has no merit, but it may. It's very unlikely a jury would side with the convict, but in some cases, the jury is not going to know the felon's criminal history. More importantly, someone has to defend the claim. Of course, you have homeowner's insurance. You'll get another surprise when you turn the case over to your insurer to provide a defense and it refuses to assist you because your acts were intentional. Every policy has an exclusion for "acts intended by the insured." You'll be paying your own lawyer to handle this one.

## JUST DON'T DO IT

There are far more ways for your application of the citizen's arrest law to go wrong than there are for it to go right. To be lawful, you have to be 100 percent right, you have to have a compliant suspect, and you have to be lucky enough to have friendly and understanding police handling the matter. You also have to have a felon who doesn't know he or she can sue you after he or she gets settled in at the state prison.

Unless you are the robbery victim or you are personally threatened during a robbery, engaging in either pursuit or apprehension of the suspect with a firearm isn't your priority. Your priority is to get out your phone and take video. Take note of the car, the license and what the suspect is wearing. Call 911. Give your name to the police, remain there and be a good witness. Felons cannot sue you for aiding the police, but they can surely sue you for assault.

In other words, erase the fanciful idea of a citizen's arrest from your mind. Get it out of your head before it gets you into a world of trouble.

## ENDNOTES

*(1) Alabama, § 13A-3-2, https://codes. findlaw.com/al/title-15-criminal-procedure/al-code-sect-15-10-7.html. (2) For example, in Missouri, § 565.110, "A person commits the offense of kidnapping in the first degree if he or she unlawfully removes another person without his or her consent from the place where he or she is found or unlawfully confines another person without his or her consent for a substantial period, for the purpose of ... Inflicting physical injury on or terrorizing the victim or another."*





# Two cops fired, settlement paid for misconduct just revealed

By: Gena Johnson (/reporterbio/Gena-Johnson) | **Warren Weekly (https://www.candgnews.com/newspaper/warrenweekly) | Published March 15, 2024**

WARREN — Two Warren police officers were charged with assault last summer for their alleged actions during a traffic stop. The officers were later fired by the Warren Police Department for misconduct, and a settlement was reportedly paid to the victim at the agreement of city attorneys with the authorization of the city's former administration.

The details were confirmed in separate press releases from Macomb County Prosecutor Peter Lucido and Warren Mayor Lori Stone, but none of it was apparently disclosed at the time.

It all came to light after a March 7 television news report by WXYZ Channel 7 journalist Ross Jones.



(https://www.candgnews.com/admin/articles/temp-image/18dc97bcf4c056f6f8d67597f6c8b9a8.gif)

"The case was resolved after the two Warren officers involved faced criminal charges and were fired from the Warren Police Department. This happened under the previous administration," Stone said in a statement on March 8.

"The City's lawyers also agreed to a settlement with the victim that was authorized by the previous administration. To be honest, I only found out about the incident recently because of the media's interest," the mayor stated.

According to a press release from the office of Macomb County Prosecuting Attorney Peter J. Lucido dated Aug. 18, 2023, but not released on the office's website until Feb. 28, Warren police officers Dammeon Player, 50, and Carlos Taylor, 28, conducted a traffic stop of a semi-truck on July 20, 2023, in the city of Center Line. Body cam footage obtained by Channel 7 reportedly shows Taylor pulling the victim out of the truck and Player deploying his Taser.

The officers were arraigned in 37th District Court before Judge Steve Bieda on Aug. 18. Player was charged with felonious assault, which is a four-year felony. Taylor was charged with assault and battery, which is a 93-day-misdemeanor. Both officers were also charged with willful failure to uphold the law as public officials, a one-year misdemeanor. A personal bond was set at $5,000 for both men.

"I feel confident that my client did not violate his duties under the law," said Taylor's attorney, James Fifelski. "At the time of the incident, Mr. Taylor was operating under the direction of and acted in accordance with proper police protocol under the circumstances. Mr. Taylor has an impeccable police record for service in the community. He maintains his innocence and we are currently working to resolve this case and clear officer Taylor's good name through the legal system."

Player's attorney, Avis Hany Choulagh, could not be reached for comment.



Ex B p 1

The incident, investigation and settlement — reportedly in the amount of $400,000, paid within 33 days of the incident — came in the wake of a June 2023 investigation into the alleged actions of now-former Warren police officer Matthew Rodriguez, which received national attention. Rodriguez was seen on video in the Warren Police Department's jail punching an inmate, throwing him to the cement floor, and beating his head against the ground. He was fired and was later indicted in federal court.

Rodriguez's attorney, Elias Muawad, said, "He is affording himself the right to a trial."

In a March 8 release about the July misconduct case, Stone described the incident involving Player and Taylor as "incredibly rare" and said she holds the Warren Police Department to the highest standard.

"As shocking as this incident was, I want the citizens of Warren to remember that this incident is an incredibly rare and isolated example of improper conduct by the Warren Police Department," Stone said in the release. "This administration will continue to take steps to ensure that the Warren Police Department, under its new leadership, stays at the forefront of recruiting and training so its employees uphold the highest expectations and integrity as they are doing their best work serving our great City."

In the release, Stone said a supervisor in the Warren Police Department identified the July incident that prompted the dismissal of the two officers as a case of police misconduct and that the matter was turned over to the Macomb County Sheriff's Office for further investigation.

Lucido issued a written statement as to why the press release was just made public when the incident happened in July.

According to Lucido, he has sent out 300 releases during his tenure. The process is to post the releases on the office's website and to distribute them by email, which are two separate steps. There have been eight press releases where police were charged with crimes, and this press release inadvertently did not follow the same process, and was only posted on the website and not emailed.

"This one should have been put on the Web page at the time and emailed but was not. Our best determination is that our Communications Director published it to the Web in February. After our initial discussion, our Communications Director found that this particular press release was published on the same page as it is now, but it was in the July 2023 section, so she moved it to the August 2023 section on the same page," Lucido said in a written statement.

Both Player and Taylor were in 37th District Court in Center Line for a probable cause conference on March 13. Player awaits a preliminary exam at 8:45 a.m. on May 8, while Taylor has a final pretrial hearing scheduled for 8:45 a.m. on June 5.

## You May Also Be Interested In

The Friday Five — March 20-23 (https://www.candgnews.com/news/friday-five-march-20-23)
C&G Newspapers

(https://www.candgnews.com/news/friday-five-march-20-23)

Ex B p2



We'd like to send you some notifications

 Notifications can be turned off anytime from browser settings

Body camera video obtained by 7 Action News through sources shows the officers approaching the driver as he sat parked in his semi-truck on a rainy day in Centerline, outside of their jurisdiction.

The man, who does not appear to speak English as his primary language, steps out of his truck before being taken to the ground by one officer, then tased by another.

The man can be heard screaming in pain as he is tased multiple times.

It is not clear why the force was used, or why the man was tased.

Sources tell 7 Action News that when attorneys for the city saw the body cam, they were alarmed by the officers' conduct.

Officer Player was charged with felonious assault, a 4-year felony, along with the misdemeanor charge of public official-willful failure to uphold







Detroit Free Press

# Ex-Warren cop who assaulted city lockup detainee wanted him to apologize

**Christina Hall**
Detroit Free Press

Ex-police officer Matthew Rodriguez asked the man he just beat up in the Warren city lockup in June 2023 to apologize to him.

"You asked for an apology. You asked for J.S. (Jaquwan Smith) to apologize," U.S. District Court Judge Jonathan J.C. Grey told Rodriguez, a second-generation police officer, Tuesday before sentencing Rodriguez to one day and one year in federal prison.

The assault was                     and has been reportedly viewed online nearly 3 million times.

"I wonder what would have happened that day if the cameras weren't working in the booking area or if (one of two officers who rushed in) didn't turn his body camera on. I wonder what would have happened," Grey told Rodriguez during his sentencing in a downtown Detroit courtroom. "This is the           unlawfully against an individual under your custody."

More:

More:



Rodriguez, 49, pleaded guilty in April to one count of                . A charge of falsification of records was dismissed Tuesday.

Grey also sentenced Rodriguez to three years of supervised release. While on release, Rodriguez must participate in a mental health treatment program that includes power dynamics and anger management.

Assistant U.S. Attorney Robert Moran told Grey that prosecutors wanted the top of the sentencing guidelines, which was 18-24 months. Attorneys for Rodriguez asked for a noncustody sentence, arguing Rodriguez has a "completely different life" as he is no longer a police officer and works as a truck driver.

Moran told the court that Smith, who was not in court, did not want to address the court at the sentencing.

Rodriguez, who sat in a gray suit between his attorneys, chose not to speak to the court, simply telling the judge: "No thank you, your honor." He was                 from the department on June 26, 2023.

"His sentence was absolutely less than what could have happened to him," said Steve Fishman, one of Rodriguez's attorneys. "I think the judge was fair. Everybody in a case like this hopes to get probation but this was a tough case."

In court, Fishman said the victim, Smith, provoked Rodriguez, but added that officers can't do what Rodriguez did.

Fishman said he doesn't believe in general deterrence, citing an example from Sunday of an encounter that police officers in Florida had with Miami Dolphins wide receiver             , with body-camera footage showing officers pulling him from his car after he rolled up his window, taking him to the ground and handcuffing him. Fishman argued that actions involving officers with bad tempers or bad training continue to happen.

Moran disagreed, saying: "I think the concept of deterrence means something." He told the court that Smith was beaten because of words, not actions, calling the assault "brutal and outrageous."

The prosecutors' sentencing memorandum filed in court detailed what occurred and some of what was said during the incident, which included Rodriguez repeatedly punching Smith with a closed fist, yelling expletives and challenging him to "Say something else. Say something else!"

It also revealed details about prior situations where Rodriguez used excessive force, including one in 2012 in which he was disciplined for a similar incident including a "roundhouse kick" of another detainee he was fingerprinting and photographing, and then lying about it in a report later.

Prosecutors said Rodriguez also used excessive force in 2017 when he served as a school resource officer at a high school in Warren. He grabbed and lifted a student by his neck and pulled him to the ground, causing the student to hit his head on a locker. Rodriguez didn't report the incident, prosecutors wrote, but he was removed from the school based on the conduct.

Grey said he had to consider what happened in those prior incidents and told Rodriguez there was "absolutely no justification for brutalizing" Smith last year. The assault included an open hand slap, kneeing Smith, closed-fist punches and slamming Smith's head. Grey said Rodriguez outweighed the victim by 100 pounds.

Smith filed a _____ — seeking $50 million — against Rodriguez, the city and two other officers. The lawsuit is ongoing.

He pleaded guilty Aug. 1 in Macomb County Circuit Court to a felony firearms offense, carrying a concealed weapon, assaulting/resisting/obstructing a police officer, breaking and entering a vehicle less than $200 and unarmed robbery in the incident for which he was initially arrested June 13, 2023, per online circuit court records.

They indicated it was requested he have no further incarceration and be sentenced under the Holmes Youthful Trainee Act. The plea was accepted and an armed robbery charge is to be dismissed at sentencing Sept. 25.

*Contact Christina Hall: chall@freepress.com. Follow her on Twitter: @challreporter.*

*Support local journalism.* _____ *to the Free Press.*

*Submit a letter to the editor at* _____





# Former Warren officer Matthew Rodriguez pleads guilty in assault of arrestee

Warren    FOX 2 Detroit

Warren police officer charged in attack on carjacking suspect during booking photo

**WARREN, Mich. (FOX 2)** - A former Warren police officer pleaded guilty to assaulting a 19-year-old man during his booking on June 13, 2023. The use of excessive force was captured on video.

In footage released by the Warren Police Department shortly after the incident then-officer Matthew Rodriguez, 49, can be seen punching Jaquwan Smith in th

head, shoving him against a wall, slamming him to the ground, and striking him again after fingerprinting and photographing him.

Smith sustained injuries as a result of the beating.

Rodriguez pleaded guilty on Monday to one count of deprivation of rights unde color of law, according to a release from the U.S. Department of Justice.

The former officer of 14 years was also accused of filing a false report of his conduct, in an effort to affect the investigation, United States Attorney Dawn N. Ison previously announced.

"During the plea hearing, Rodriguez admitted that he knew that his use of force against (Smith) was unreasonable and contrary to department policy, and that wrote a report in which he made false statements about the incident and omitt material information."

Warren police fired Rodriguez for the assault on June 26, 2023, following an internal investigation.

"This police officer carried out a violent assault on a man who was doing nothin to harm or endanger him and then tried to cover up his crime," said Assistant Attorney General Kristen Clarke of the Justice Department's Civil Rights Division the release. "Police officers are not above the law in our country and will be hel accountable when they violate people's civil and constitutional rights.

"When law enforcement abuses their authority, it erodes trust between the pol and the community they are sworn to protect and serve."

**Warren officials show booking officer's assault against inmate**

Rodriguez will be sentenced on Aug. 20. He faces up to 10 years in federal pris

"A federal district court judge will determine any sentence after considering the
U.S. Sentencing Guidelines and other statutory factors," the U.S. Department o
Justice stated.

Warren      Crime and Public Safety

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON and
ALBERT THROWER,
    Plaintiffs,
v.

ROBERT SCOTT, *et al.*,
    Defendants.
                /

Case No. 23-11597

Brandy R. McMillion
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (ECF No. 35)

### I.    PROCEDURAL HISTORY

Plaintiffs Elizabeth Nelson and Albert Thrower filed this case on July 5, 2023. (ECF No. 1). The operative amended complaint was filed on August 25, 2023. (ECF No. 29). Defendants Badalamente, Cummins, Dwyer, Fourts, Gauss, Kijewski, Lipa, Michaels, Murph, Reichling, Ross, Scott, Trembath, Warack, the City of Warren, and City of Warren zoning department moved to dismiss the amended complaint and for summary judgment. (ECF No. 35). The motion is fully briefed. This matter was referred to the undersigned for all pretrial matters. (ECF No. 44).

For the reasons discussed below, the undersigned recommends that the motion to dismiss be **GRANTED**.

### II.    AMENDED COMPLAINT ALLEGATIONS

This lawsuit is about a search of Plaintiffs' residential building located in Warren, Michigan, and about the City of Warren towing Nelson's cars that were parked on the property. At the time of the alleged events, Thrower was trying to evict tenant Kimberly Branson, who occupied the upper level of the Warren property, but the eviction was stayed beginning in March 2020 because of the Covid-19 pandemic. (ECF No. 29, PageID.87, 91). Thrower told Branson that she was only allowed in the basement for emergency purposes. While they primarily resided in Ohio, Nelson and Thrower used the basement as their residence (*Id.* at PageID.89). On March 11, 2020, Branson used her key to the basement and allowed Defendants Scott, Cummins, Gauss, Badalemente, Kijewski, Murphy, Warack, Lipa, and Ghaham to enter it. These Defendants did not have a search warrant and despite the ongoing pandemic did not wear a mask inside the premises. (*Id.* at PageID.90). Plaintiffs assert that Branson allowed the Defendants in the basement because she was a "secret informant" for the City of Warren. (*Id.* at PageID.90). Plaintiffs learned of Defendants' search of the residence on April 23, 2020.[1] (*Id.* at PageID.91).

---

[1] Plaintiff's wrote "4/23." Read in context, they did not mean that they found out about the search during April 2023; rather, they became aware on April 23, 2020.

2

On July 7, 2021, Judge Chumra of the 37th District Court issued a warrant to tow vehicles on Plaintiff's property. The warrant authorized towing of "inoperable vehicles." (*Id.* at PageID.93). Two vehicles were towed from the property that day, but according to Plaintiffs they were towed before Judge Chumra's order was issued. The same day Defendant Scott wrote a ticket for having an unsafe structure for human habitation at Plaintiff's and Branson's Warren residence. (*Id.*). Some Defendants removed Plaintiffs' property that included grills, wood, and drainage piping, and charged Plaintiffs $687.50 for "illegally" taking that property. (*Id.* at PageID.94).

On July 8, 2021, Thrower went to the tow yard to retrieve the vehicles. Defendant Hertz stalled Thrower while Defendant Scott was on his way to the tow yard. When Scott arrived, he threw Thrower against the wall and conducted a citizen's arrest for the unsafe structure-for-habitation ticket. (*Id.* at PageID.94-95). While restraining him, Scott searched through Thrower's bag. (*Id.* at PageID.95). Thrower alleges that Scott lacked authority to conduct a citizen's arrest for a misdemeanor charge. Warren police then arrived but did not arrest Scott for kidnapping; instead they arrested Thrower on the misdemeanor housing violation. (*Id.*).

The claims are as follows. Claim One alleges that Scott, Gauss, Cummins, Badalamente, Kijewski, Lipa, Murphy, Warack, Michaels, Trembeth, and Ross

violated the Fourth and Fourteenth Amendments by illegally entering the basement apartment without a search warrant or other authority. (*Id.* at PageID.97). In Claim Two, Plaintiffs assert that those same Defendants entered the property without wearing masks or gloves, thereby exposing Plaintiffs to a "state created risk" of contracting Covid-19 in violation of the Fourth, Fifth, and Fourteenth Amendments. (*Id.*). Claim Three alleges that towing the vehicles on July 7, 2021, violated the Fourth, Fifth, and Fourteenth Amendments because both cars were operable and Plaintiffs were not given notice and an opportunity to be heard before the cars were taken. (*Id.* at PageID.97-98). Claim Four says that Scott violated the Constitution by conducting a citizen's arrest, restraining Thrower and spitting on him which exposed Thrower to Covid-19. (*Id.* at PageID.98). Claim Five alleges that Scott's actions during the alleged arrest constituted assault, battery, and kidnapping. (*Id.*). In Claim Six, Plaintiffs stated that the Defendants' actions as stated in the complaint exposed them to a state created risk because they had to retrieve the towed vehicles during a pandemic. (*Id.* at PageID.99). Finally, in Count Seven, Plaintiffs assert that "Per facts rewritten herein intentional infliction of emotional distress." (*Id.*).

**III.   ANALYSIS AND RECOMMENDATIONS**

    A.   <u>Governing Standards</u>

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).

"[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

B.  Discussion

Some background on Plaintiffs' prior litigation is necessary before addressing Defendants' motion. Plaintiffs sued many of the same defendants in a 2022 lawsuit challenging the towing of four vehicles during May 2020 from the same property. *See* Case No. 22-10918. That case was dismissed following motions to dismiss and for summary judgment being granted. Defendants here point to the similarity of the claims in the cases to argue that this lawsuit should also be dismissed. (ECF No. 35). Some claims are similar, such as Plaintiffs' claims that defendants exposed them to Covid-19. But the claims are different enough that the undersigned does not rely on the 2022 case here.

1.  Thrower's Pro Se Status

At the outset of their brief, Defendants assert that the Court should not give Thrower's complaint the same latitude it would other *pro se* complaints because Thrower is an experienced litigator having filed many lawsuits here and in Ohio, and in some courts is banned from filing lawsuits without leave because of the frivolous and vexatious nature of his claims.  (ECF No. 35, PageID.173-75).

The undersigned will evaluate the complaint under the Fed. R. Civ. P. 12(b)(6) standards and will give due consideration to the fact that Plaintiffs are unrepresented.  This means that that undersigned holds the complaint to less stringent standards, but it does not mean that the undersigned will plead facts for the Plaintiffs to support conclusory allegations.

### 2.      Covid-19 and State Created Danger

Defendants argue that the claims related to exposing Plaintiffs to Covid-19, by entering the residence without masks and forcing them to go the tow yard during the pandemic, should be dismissed for failure to state a "state created danger" claim.  The undersigned agrees that the claims should be dismissed for two reasons.

First, Defendants are correct that Plaintiffs did not state a viable claim.  The "state created danger" doctrine is a substantive due process claim that can provide for holding a government actor liable for injury to a private person.  To succeed on the claim, the plaintiff must show "(1) an affirmative act by the governmental actor

either created or increased the risk that the plaintiff would be exposed to the injurious conduct of the private person; (2) the governmental actor's act especially endangered the plaintiff or a small class of which the plaintiff was a member; and (3) the governmental actor had the requisite degree of culpability." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008) (citation omitted).  Plaintiffs' claims cannot succeed because their allegations do not show that any of the Defendants especially endangered their safety.  And importantly, as Defendants note, they did not create the pandemic and the dangers of the virus were not limited to just Plaintiffs. (ECF No. 35, PageID.189).

The second reason why this claim fails is Plaintiffs lack standing.[2]  This issue is the basis for dismissing similar claims in the 2022 lawsuit.  As stated there, "[t]o have Article III standing to sue in federal court, plaintiffs must demonstrate, among other things, that they suffered a concrete harm. No concrete harm, no standing.'' *Transunion LLC v. Ramirez*, 594 U.S. 413, 417 (2021).  Despite Plaintiffs' allegations about being at risk for Covid-19 complications, they do not allege that they caught the virus while in Michigan.  Had they, the claim would still fail because placing the blame on Defendants' conduct, in the early days of the global pandemic, is too tenuous.

---

[2] Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*. *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

3.   Defendants City of Warren, Dwyer, Fouts, and Reichling

Defendants City of Warren, Dwyer, Fouts, and Reichling argue they should be dismissed because Plaintiffs pleaded no facts establishing that they violated a federal or state law. They point out that Plaintiffs use the universal "Defendants" to attempt to state claims against all defendants, but made no specific, non-conclusory allegations against them. Plaintiffs did not address this argument in response.

It is true that Plaintiffs did not name either of these defendants in Counts One through Five of the amended complaint. In Count Six, Plaintiffs stated that "Defendants" actions exposed them to a State Created Danger. (ECF No. 29, PageID.99). The undersigned has already recommended that the "state created danger" claims be dismissed. Count Seven, for intentional infliction of emotional distress, names no Defendants, so presumably it is addressed to all Defendants.

Allegations that reference these defendants by name are conclusory. Plaintiffs allege that the City of Warren "is being sued for 'failure to train' [its] employees." (ECF No. 29, PageID.88). To successfully sue a municipality for failure to train, Plaintiffs needed to address the "adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). There are no such allegations in the complaint. The City of Warren should be dismissed.

They allege that Warren Mayor Fouts acted in conspiracy with the other individual defendants to violate Plaintiff's constitutional rights. (ECF No. 29, PageID.87). To state a conspiracy claim under § 1983, a plaintiff must show, not merely conclude: (1) a single plan, (2) that the alleged co-conspirator shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy that deprived the plaintiff of his or her civil rights. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6thCir. 1985). Merely stating that the defendant was part of a conspiracy to violate the plaintiff's rights does not satisfy the pleading standards and fails to state a conspiracy claim. Plaintiffs also allege that Fouts issued an emergency declaration on February 20, 2020, about Covid-19. (*Id.* at PageID.90). This fact does not establish any wrongdoing. They later allege that Fouts issued a news release about bad landlords, which Plaintiffs allege is part of the conspiracy. (*Id.* at PageID.96). This allegation does not state a conspiracy claim, nor does the issuance of a news release, without more facts, establish entitlement to any relief. Fouts should be dismissed.

Defendant Warren Police Commissioner Dwyer is included in the same conclusory statements about being part of a conspiracy to violate Plaintiffs' rights; the conspiracy claim should be dismissed. (*Id.* at PageID.87). Plaintiffs also state that Dwyer was among ten other defendants who failed to find out about whose cars were parked at the property on July 7, 2021, or whether the cars were

operable. (*Id.* at PageID.96). First, it is unclear how failure to discover the ownership of the vehicles entitles Plaintiffs to relief considering their claim is that the order permitting taking the cars specified that only inoperable cars could be taken. Second, the allegation against the Commissioner of the Warren Police Department that he failed to figure out whether the vehicles were operable appears to be a claim that he violated the order to tow inoperable vehicles. As much as this is a federal claim, it sounds in supervisory liability. Plaintiffs allege that Dwyer is sued in his individual capacity for failure to train his police officers. (*Id.* at PageID.88-89). This assertion not only lacks factual support about a faulty training program, but it also appears to be an attempt to sue Dwyer for the actions of his subordinates. To establish supervisory liability, a plaintiff must establish that the supervisory official "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008) (citation and quotation marks omitted). There are no such allegations in the amended complaint. Dwyer should be dismissed.

Plaintiffs mention that Fouts and Dwyer, as policymakers, had a custom and policy of violating constitutional rights in their response brief. (*See, e.g.*, ECF No. 40, PageID.407). Even if the allegations made for the first time in the response brief were sufficient to state a claim to relief, which they are not, statements in a response brief are not part of the complaint and are not considered here.

*See Johnson v. Metro. Gov't of Nashville & Davidson Cnty., Tenn.*, 502 F. App'x 523, 541-42 (6th Cir. 2012) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).") (citation omitted).

Lastly, as to Defendant Captain Reichling, Plaintiffs allege he participated in the conspiracy with all other defendants, he was at the scene when the two cars were towed and, like Dwyer, he did not nothing to ascertain the ownership of the cars. (ECF No. 29, PageID.87, 89, 96). As mentioned, the conspiracy allegation is conclusory. Riechling's presence at the scene and failure to learn of ownership, without more, does not illuminate a claim to relief under the Fourth or Fourteenth Amendments. To the extent that Plaintiffs seek to hold Reichling responsible for the actions of subordinates, these allegations are insufficient as explained above. Reichling should be dismissed.

   4. Entry Into Plaintiffs' Basement Residence – Claim Two

Plaintiffs allege that the remaining Defendants' search of the basement residence at Thrower's property without a warrant on March 11, 2020, violated the Fourth and Fourteenth Amendments. In the opening brief, Defendants argue that this claim is time barred. Plaintiffs alleged they found out about the search on April 23, 2020, but filed the lawsuit on July 5, 2023, beyond the statute of limitations. (ECF No. 35, PageID.185-86).

Plaintiffs' response brief moves between claims and arguments without much structure, making it difficult to understand their response to Defendants' motion. That said, in their response, Plaintiffs argue that the search was illegal—they did not give permission to enter the basement residence and Defendants did not obtain an administrative warrant to enter the property. (ECF No. 40, PageID.406-07). Next, they state that Thrower did not learn of the illegal entry until May 22, 2020, and Nelson did not become aware until June 22, 2020. (*Id.* at PageID.410). They contend that the "covid tolling statute" in effect from March 10, 2020, through June 22, 2020, tolled the three-year statute of limitations by 102 days. (*Id.* at PageID.412-13). Thus, they posit that the statute of limitations began to run on June 22, 2020. But then they contend that the discovery rule would apply to toll the statute further. Contrary to their earlier representations, Plaintiffs now say they found out about the illegal entry on August 21, 2020. (*Id.* at PageID.413). This would make their July 5, 2023, timely. They also appear to assert that the continuing violations doctrine applies as well. (*Id.* at PageID.415).

In reply, Defendants argue that even if the Michigan Supreme Court's Administrative Order tolling limitations periods for Covid-19 applied to the claims, it would only toll the claim until June 21, 2023, so the July 5, 2023, complaint is

untimely.[3] (ECF No. 43, PageID.518). Defendants did not address the inconsistency in Plaintiffs' argument about when they discovered the allegedly illegal entry. They next argue that even if the claim is not time-barred, it should be dismissed for failure to state a claim. They insist that the tenant's consent to the search was sufficient to permit them entrance into the residence without a warrant. (*Id.* at PageID.518-19).

The undersigned will first address the argument, raised in reply, that the warrantless search was lawful because the co-tenant gave permission and entrance into the basement residence. It is dubious whether the Court can even consider this argument given that it was raised for the first time in reply to arguments about the statute of limitations. Plaintiffs had no chance to respond to this argument. As a general rule, issues raised for the first time in a reply brief are waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008). But even if the Court were to consider the argument, which it is not, it would be a losing one.

"To the Fourth Amendment rule ordinarily prohibiting the warrantless entry of a person's house as unreasonable per se, one 'jealously and carefully drawn' exception recognizes the validity of searches with the voluntary consent of an

---

[3] The Michigan Supreme Court issued administrative orders tolling all Michigan statutes of limitations for 102 days during the COVID-19 pandemic in 2020. *See Carter v. DTN Mgmt. Co.*, 2023 WL 439760, at *3 & n.2 (Mich. Ct. App. Jan. 26, 2023) (discussing the Michigan Supreme Court's tolling orders and noting that they excluded the counting of days starting on March 10, 2020, until June 20, 2020).

individual possessing authority." *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)

(quoting *Jones v. United States,* 357 U.S. 493, 499 (1958)) (internal citations

omitted). A co-occupant who shares common authority over the premises to be

inspected can grant consent for a search of that area. *Id.* This means that persons

who share living space may consent to a search of common areas in the home, but

may not consent to the search of the other occupant's private space, such as a

bedroom. *See United States v. Tapia-Rodriguez*, 968 F.3d 891, 895 (8th Cir. 2020)

("But a co-tenant's unrestricted consent to search leased property will not justify a

warrantless search of a room 'set aside for [the defendant's] own private use.'")

quoting *United States v. Heisman*, 503 F.2d 1284, 1288 (8th Cir. 1974) (reversing

conviction because, viewed objectively, the consenting co-tenant did not have

"joint access or control" over defendant's room)).

Considering the complaint allegations as true, Plaintiffs' note that the tenant

knew she could only access the basement in an emergency.

Defendants' reliance on *Georgia*, 547 U.S. at 109, as a case factually

analogous to the allegations raised here is misplaced. There, a co-occupant

consented to search the premises without a warrant, but the other occupant was

also present and declined consent to the search. The officers searched the property

anyway. That search was held to be invalid as to the non-consenting occupant. *Id.*

at 120. That is not what happened here, according to Plaintiffs. Plaintiffs' absence

from the house did not give the co-occupant authority over the entire premises. So

Defendants' argument that they had authority to conduct the warrantless search is

not well taken.

Turing to the statute of limitations, Michigan has a three-year statute of

limitations for claims brought under 42 U.S.C. § 1983. This statute of limitations

applies to the Fourth and Fourteenth Amendment claims. The statute of limitations

was tolled in Michigan between March 10, 2020, and June 20, 2020. *See*

*Gottsleben v. Informa Media, Inc.*, 2023 WL 4397226, at *3 (W.D. Mich. July 7,

2023). Plaintiffs' unlawful search claim would begin to be counted, at the earliest,

on June 21, 2020. A claim that accrued during June 2020 needed to be filed in

June 2023, so Plaintiffs' July 5, 2023, complaint would be untimely.

Defendants did not address Plaintiffs' changing facts in their response brief.

For the first time in their brief, they said they learned of the unlawful search not in

April 2020, but in August 2020. (ECF No. 40, PageID.413). Plaintiffs did not

explain the change in story from the amended complaint.[4] As stated above,

allegations made in a response brief are not part of the complaint and cannot be

considered as facts establishing a claim. Plaintiffs were on notice that their

amended complaint states they became aware of the search in April 2020, yet did

---

[4] They also did not mention the search of the basement residence in their affidavits.
(ECF No. 40, PageID.465-69).

not move to amend the complaint to change the allegation.[5]  Plaintiffs' litigation history gives the Court confidence that they are aware of the procedures for amending their complaint as they have successfully done so often.

Because their amended complaint alleges that they became aware of the search in April 2020, the limitations period began to run at the expiration of the Covid-19 tolling period in June 2020.  The continuing violations doctrine does not save the claim.  "A continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Broom v. Strickland*, 579 F.3d 553, 555 (6th Cir. 2009) (punctuation modified).  The allegedly unlawful search in March 2020 and the allegedly illegal seizure of vehicles in July 2021 are not continual unlawful acts.  Plaintiff's July 2023 complaint about the unlawful search is time-barred, and the claim should be dismissed.

     5.     Towing Operable Vehicles – Claim Three

In Claim Three, Plaintiffs allege that Defendants Scott, Gauss, Cummins, Badalamente, Kijewski, Warack, Murphy, Lipa, Michaels, Trembeth, and Ross unlawfully towed their two vehicles from the property on July 7, 2021.  This instance of towing the vehicles was allegedly unlawful because the court order to

---

[5] They assert that they sought to amend their complaint in their earlier case at Case No. 22-10918 to add the unlawful search claim, but review of the motions to amend does not show that they sought to amend their complaints to add this claim or that they found out about the search later in 2020.

tow the cars was issued after the cars were towed and it was limited to inoperable vehicles, but both cars were operable. (ECF No. 29, PageID.97-98).  Plaintiffs also allege the order was issued without permitting them an opportunity to be heard. (*Id.* at PageID.98).

Defendants assert that is it unclear from the allegations who towed the vehicles, who failed to give Plaintiffs notice, and who violated the July 7, 2021, order.  They contend that the lack of specific pleading does not rise the level of plausibility, so the claim should be dismissed. (ECF No. 35, PageID.186-87).

Plaintiffs offer little clarity on this claim in the response brief.  Aside from restating (and sometimes copying) the complaint allegations, they add that Defendants Michaels, Trembath, and Ross conferred with non-defendant Judge Chumra to obtain a misdemeanor warrant on July 7, 2021, and that Defendants Reichling and Dwyer and an unknown officer ordered that the cars be towed. (ECF No. 40, PageID.421-23).  In concluding their argument, they again list twelve defendants as responsible for towing the vehicles. (*Id.* at PageID.423).

The only defendants named in Claim Three mentioned in the response are Trembath and Michaels.  For the remaining Defendants there is no articulation of how they were involved in towing the vehicles.  "When suing an individual actor . . . for constitutional violations under § 1983, a plaintiff must demonstrate that the actor 'directly participated' in the alleged misconduct, at least by encouraging,

implicitly authorizing, approving or knowingly acquiescing in the misconduct, if not carrying it out himself." *Flagg v. City of Detroit*, 715 F.3d 165, 174 (6th Cir. 2013). Indeed, "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Jack-Bey v. Michigan Dep't of Corr.*, 2014 WL 1255910, at *5 (W.D. Mich. Mar. 26, 2014) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis omitted)). True, it is not impermissible to refer to Defendants collectively in a complaint, but generic or blanket allegations about "defendants" or lumping defendants together, without accompanying allegations showing how each of those defendants violated the Constitution or federal laws, is insufficient. *See Rouse v. Washington*, 2021 WL 2434196, at *8 (E.D. Mich. June 15, 2021).

Because of the manner of Plaintiffs' pleading, it is impossible to tell whether, for instance, it is plausible that Defendant Gauss violated the Fourth or Fourteenth Amendment as it relates to towing the two vehicles. We do not know what Gauss did or did not do. And while additional facts in a response brief are not considered here, not even in the response do we learn what Gauss did or did not do to violate Plaintiffs' rights. At most, from the response brief, we know that Trembath and Michaels spoke with Judge Chumra about the order to tow the

vehicles. We do not know if Trembath and Michaels were also present at the scene, or if they knew the vehicles were towed before the order was signed, or if they knew the vehicles were operable. Conferring with a judge about a warrant, without more, does not violate the Constitution or federal law.

Plaintiffs are the masters of their complaint. The Court does not create additional allegations to save a claim in a complaint. This claim should be dismissed without prejudice to Plaintiffs' ability to file an amended complaint in which they expressly allege personal involvement by the individuals named.

6. Claims Four and Five Against Defendant Scott

Plaintiff Thrower alleges that Scott attempted a citizen's arrest for misdemeanor housing violations on July 8, 2021, and in doing so committed assault, battery, and kidnapping, and violated the Fourth, Fifth, and Fourteenth Amendments. More specifically, Thrower alleges that Scott restrained him, spat on him, and went through his bag. (ECF No. 29, PageID.98). He says that Scott told him during the interaction that he was "doing a citizens arrest." (*Id.* at PageID.95). Warren police officers arrived at the scene and arrested Plaintiff for housing violations.

Defendant Scott argues that the claim should be dismissed because Plaintiff did not show the arrest was made without probable cause and because he did not arrest Plaintiff, the Warren Police Department did. He also argues that the assault,

battery, and kidnapping claims should be dismissed because they consist entirely of legal conclusions. (ECF No. 35, PageID.187-88).

To begin with, the undersigned is unconvinced by Scott's argument that the claim fails because he was not the person who ultimately arrested Thrower. The argument is not well-taken because the allegations establish that Scott restrained Plaintiff, telling Plaintiff he was conducting a citizen's arrest, and it can be inferred he held Plaintiff until the Warren police arrived to take Plaintiff into custody. He cites no authority to suggest that he could only be liable for his actions if he took Plaintiff into custody.

Plaintiff alleges that Scott's conduct violated both federal and state law. As to any federal violation, Plaintiff's claim of unlawful arrest or seizure is properly analyzed under the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) ("Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.").

False arrest provides the framework closest to the conduct Plaintiff contests. *See Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1142 (9th Cir. 2012) (evaluating claim of unlawful citizens' arrest under framework for Fourth Amendment false arrest after finding citizen arrester to be state actor). To prevail on a claim of

unlawful arrest, a plaintiff must demonstrate that the officer lacked probable cause to arrest him or her. *Halasah v. City of Kirtland, Ohio*, 574 F. App'x 624, 629 (6th Cir. 2014); *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008) (unreasonable seizure); *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (false arrest). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Sykes v. Anderson*, 625 F.3d 294, 306 (6th Cir. 2010).

As Scott noted, Plaintiffs did not allege that the citizens' arrest (or his ultimate arrest by police officers) was affected without probable cause. What is more, Thrower alleges his arrest by the Warren Police Department was pursuant to misdemeanor housing violations, suggesting there was probable cause for the arrest. *See Devenpeck v. Alford*, 543 U.S. 146, 153, 155 (2004) ("[The officer's] subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."). In their response brief, Plaintiffs acknowledge that there was a warrant for Plaintiff's arrest for housing violations. (ECF No. 40, PageID.422). Plaintiffs were on notice of the lack of allegations about probable cause in the amended complaint, yet did not seek to amend their complaint. So neither the allegations nor the briefing establishes that he was arrested without probable cause. The undersigned therefore recommends that Thrower's federal claim about the interaction with Scott be dismissed.

7.      Remaining State-Law Claims

Having recommended that all the federal claims be dismissed, the undersigned further recommends that the Court decline supplemental jurisdiction over Plaintiffs' state-law claims. Under 28 U.S.C. § 1367, a district judge may decline to exercise supplemental jurisdiction  over state-law claims if "the district court has dismissed all claims over which it has original jurisdiction. . . ." 28 U.S.C. § 1367(c)(3). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims [.]" *Musson Theatrical, Inc. v. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). Indeed, the Sixth Circuit has repeatedly advised that the district courts should not exercise supplemental jurisdiction over state-law claims where all original jurisdiction claims have been dismissed. *See, e.g.*, *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008). The undersigned recommends Plaintiffs' state-law claims be dismissed without prejudice.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to dismiss (ECF No. 35) be **GRANTED** and that all federal claims be **DISMISSED**, but that the claims about the allegedly unlawful seizure of the two vehicles be **DISMISSED WITHOUT PREJUDICE**.  The undersigned further

23

**RECOMMENDS** that the state-law claims be **DISMISSED WITHOUT PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

24

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date:  April 9, 2024.          s/Curtis Ivy, Jr.
                               Curtis Ivy, Jr.
                               United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of
record and any unrepresented parties via the Court's ECF System or by First Class
U.S. mail on April 9, 2024.

s/Sara Krause
Case Manager
(810) 341-7850

25

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ELIZABETH NELSON and
ALBERT THROWER,
    Plaintiffs,
    v.

ROBERT SCOTT, *et al.*,
    Defendants.
_____/

Case No. 23-11597

Brandy R. McMillion
United States District Judge

Curtis Ivy, Jr.
United States Magistrate Judge

## REPORT AND RECOMMENDATION ON MOTION TO DISMISS (ECF No. 57)

### I.    PROCEDURAL HISTORY

Plaintiffs Nelson and Thrower filed a lawsuit against City of Warren officials and two towing companies and employees for violations of their constitutional rights when entering their property without permission and towing their vehicles away. The defendants associated with the City of Warren have been dismissed. (ECF Nos. 46, 78). Defendants Able Towing, LLC, Bruce Hertz, Edward D. Hertz, Randy Hertz, Sandra A. Hertz, Service Towing Inc., and Randy Sullivan, the "Towing Defendants," moved to the dismiss the amended complaint. (ECF No. 57). This case was referred to the undersigned for all pretrial matters. (ECF No. 44).

For the reasons discussed below, the undersigned recommends that the motion to dismiss be **GRANTED**.

### II.    AMENDED COMPLAINT ALLEGATIONS

During a scheduling conference, the parties agreed that Plaintiffs would file a third amended complaint stating all their claims against the Towing Defendants. (ECF No. 53). The third amended complaint is now the operative complaint. (ECF No. 55).

Plaintiffs assert that an illegal search and seizure conducted on July 7 and 8, 2021, violated the Fourth, Fifth, and Fourteenth Amendments, as well as state law. (*Id.* at PageID.600-01). Much of the amended complaint concerns dismissed defendants. What is relevant to the Towing Defendants' motion is addressed here.

Plaintiffs assert that all Defendants were acting under color of state law in their involvement in the constitutional violations. The "private parties" Towing Defendants conspired "with state actors" to deprive Plaintiffs of their rights. (*Id.* at PageID.601). The "private parties" Towing Defendants acted under color of state law by acting in concert with state actors. (*Id.* at PageID.602). Plaintiffs assert that private parties can be liable as state actors when their actions are "inextricably intertwined" with the conduct of the government. (*Id.*). They contend that the Towing Defendants' actions "fit this definition for liability of private parties acting in concert with (D) Scott." (*Id.*).

2

Plaintiffs allege that on July 7, 2021, former defendant Scott learned that Plaintiff Thrower arrived at his property at 7568 Hudson Avenue, Warren, Michigan, to mow the lawn. Scott called a few of the Towing Defendants to meet Scott at the property and tow vehicles. (*Id.* at PageID.603). Two vehicles were towed. Plaintiff Thrower heard Scott "scream at" the Towing Defendants "I want the Honda towed." (*Id.*). One of the defendants said "I can't tow [sic] Honda without damaging it because it's at an angle." (*Id.*). Scott said he did not care. A state court judge later issued an order to tow "inoperable vehicles" at the property, but this order is allegedly void. (*Id.* at PageID.603-04).

On July 8, 2021, Plaintiff Thrower went to Defendant Service Towing, Inc., to retrieve one of the vehicles around 8:30 am. One of the defendant towing employees "stalled" him "per earlier agreement with (D) Scott for approximately 30 minutes pretending like (D) could not find [Thrower's] Silverado." (*Id.* at PageID.604). While Plaintiff Thrower waited, former defendant Scott arrived and attacked him and performed a "citizen's arrest." The Towing Defendants who were present watched. (*Id.*).

When Plaintiff Thrower was released from the hospital, he went back to Service Towing to retrieve his vehicles. The Honda was damaged, but he paid for both vehicles. (*Id.* at PageID.605).

There are two counts. "Claim Number One" asserts that former defendant Scott and the Towing Defendants conspired to violate the Constitution when they entered his property without a search warrant and towed two operable vehicles belonging to Plaintiffs. "Claim Number Two" asserts that Scott acted in agreement with the Towing Defendants to attack him and perform a "citizen's arrest" while the Towing Defendants watched "per agreement." (*Id.*).

## III.  ANALYSIS AND RECOMMENDATIONS

### A.  Governing Standards

When deciding a motion to dismiss under Rule 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility of an

inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

The Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Yet even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). "[C]ourts may not rewrite a complaint to include claims that were never presented ... nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F. Supp. 2d 757, 766 (E.D. Mich. 2009); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

B.  Discussion

The Towing Defendants addressed each of Plaintiffs' substantive claims and ended their brief arguing that they are not state actors subject to suit under 42

U.S.C. § 1983.  Because that alone is a basis for dismissal, the undersigned will focus this report and recommendation on state action.

"[N]umerous courts have found that when a city official uses a towing company's services, that fact alone does not make the towing company liable for violating the plaintiff's constitutional rights." *Harris v. Malone*, 2022 WL 400809, at *2 (E.D. Mich. Feb. 9, 2022) (collecting cases).  "Private action . . . may . . . count as state action under discrete circumstances[,]" *Thomas v. Nationwide Child. Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018), as long as the private conduct "causing the deprivation of a federal right may be fairly attributable to the state," *Revis v. Meldrum*, 489 F.3d 273, 289 (6th Cir. 2007).  The Sixth Circuit uses "three tests to resolve the state-actor inquiry: the public-function test, the state-compulsion test, and the nexus test." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

Liability arises under the public function test if the private individual or entity "exercises powers which are traditionally exclusively reserved to the state." *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).  The Sixth Circuit interprets this test "narrowly," such that "[o]nly functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state action." *Chapman v. Higbee Co.*, 319 F.3d 825, 833–34 (6th Cir. 2003) (internal citations omitted).  Liability attaches under the compulsion test if the entity or individual "exercised coercive power or . . . provided such significant

encouragement, either overt or covert, that the choice" to tow the vehicles "must in law be deemed to be that of the government." *United States v. Miller*, 982 F.3d 412, 423 (6th Cir. 2020).

Plaintiffs' allegations do not suggest public function or compulsion. Towing vehicles is not a function typically reserved for the government—the company merely handled the logistics of transporting the vehicles for the Warren officials. The compulsion test is also unmet. Merely working for the government is insufficient. *See Partin v. Davis*, 675 F. App'x 575, 586-87 (6th Cir. 2017) ("A plaintiff must show more than joint activity with the state to prove that a private party working for the government is a state actor. In particular, she must demonstrate "pervasive entwinement" between the two entities surpassing that of a mere contractual relationship."); *Robertson v. Breakthrough Towing, LLC*, 2022 WL 4292314, at *7 (E.D. Mich. Sept. 16, 2022) ("case law in this circuit indicates that towing companies are generally not state actors under the nexus and state compulsion theories—both at the summary judgment stage and on the face of the pleadings—even when those companies tow vehicles pursuant to government contracts or at the express request of the police.") (emphasis in original and footnotes omitted).

"Under the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and

the private party's conduct so that the conduct may be fairly attributed to the state itself." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003). A conspiracy could satisfy the nexus test, *see Miller*, 982 F.3d at 425, but Plaintiffs' allegations that the Towing Defendants conspired with Scott are conclusory. To successfully plead a § 1983 conspiracy, a plaintiff must allege facts sufficient to state a claim that (i) a single plan existed, (ii) the conspirators shared a conspiratorial objective to deprive the plaintiff of his or her constitutional rights, and (iii) an overt act was committed in furtherance of the conspiracy that caused the injury. *Hooks v. Hooks*, 771 F.2d 935, 943-944 (6th Cir. 1985). "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). This pleading standard is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008). Plaintiffs do no more than allege that Scott and the Towing Defendants conspired together to tow the vehicles and for the Towing Defendants to falsely hold Thrower at the facility until Scott arrived to assault him and arrest him. The Court cannot accept conclusory allegations as established fact. *Iqbal*, 556 U.S. at 679 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Plaintiffs cite *Memphis, Tenn. Area Local, Am. Postal Workers Union, ALF-CIO v. City of Memphis*, 361 F.3d 989, 905 (6th Cir. 2004), in support of their claims against the Towing Defendants. But in that case, "all of the elements of conspiracy [were] sufficiently alleged." *Id.* The allegations here are not sufficiently alleged. So the nexus test is also unsatisfied.

Both Plaintiffs and Defendants point to *Nugent v Spectrum Juv. Just Servs*, 72 F4th 135, 139-140 (6th Cir. 2023), as providing an "entwinement test." (*See* ECF No. 57, PageID,637; ECF No. 67, PageID.725). *Nugent* does not mention such a test. "Entwinement" is a consideration for the nexus test, which Plaintiffs have not satisfied.

Because Plaintiffs have not adequately alleged that the Towing Defendants and Warren Defendants were "pervasive[ly] entwin[ed]" with each other such that the towing company's relationship with Warren surpassed that of a mere contractual relationship and made it a state actor. *Plummer v. Detroit Police Dep't*, 2017 WL 1091260, at *4 (E.D. Mich. Mar. 23, 2017) ("Even if the police directed the company to tow Plaintiff's vehicle to the company's storage facility, the company's involvement falls short of demonstrating the kind of close nexus

9

with government officials that is necessary to expose it to § 1983 liability."). Thus, the constitutional claims against the Towing Defendants should be dismissed.

Given the recommendation to dismiss all the federal claims for lack of state action, the undersigned further recommends that the Court decline to accept supplemental jurisdiction over the state-law claims and instead dismiss those without prejudice. *Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001) ("Where a district court has jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.").

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the motion to dismiss (ECF No. 57) be **GRANTED**.

The parties here may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health*

10

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of*

*Teachers Loc. 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2,"

etc. Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity. Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc. If the Court determines that any objections lack merit, it may rule

without awaiting the response.

Date:  September 30, 2024.        s/Curtis Ivy, Jr.
                                  Curtis Ivy, Jr.
                                  United States Magistrate Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of
record and any unrepresented parties via the Court's ECF System or by First Class
U.S. mail on September 30, 2024.

s/Sara Krause
Case Manager
(810) 341-7850

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ELIZABETH NELSON, and
ALBERT THROWER

      Plaintiffs,

v.

ROBERT SCOTT, *et. al.*,

      Defendants.

Case No. 2:23-cv-11597
Hon. Brandy R. McMillion
Mag. Judge Curtis Ivy, Jr.

_____/

**ORDER ADOPTING THE RECOMMENDED DISPOSITION OF**
**THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
**(ECF NO. 82), OVERRULING PLAINTIFFS' OBJECTIONS (ECF NO. 83),**
**GRANTING DEFENDANTS' MOTION TO DISMISS (ECF NO. 57), AND**
**DISMISSING THE THIRD AMENDED COMPLAINT (ECF NO. 55)**

Plaintiffs Elizabeth Nelson and Albert Thrower (together, "Plaintiffs") filed this *pro se* civil rights action against Defendants City of Warren, James Fouts, Robert Scott, James Cummins, Curtis Gauss, Frank Badalamente, Mary Michaels, Brian Kijewski, Marilyn Trembath, Everett Murphy, Pete Warack, Annette Gattari-Ross, R. Lipa, William Reichling, and William Dwyer (collectively, the "City of Warren Defendants") and Defendants Service Towing, Inc., Able Towing, LLC, Dennis Hertz, Bruce Hertz, Sandra Hertz, Edward D. Hertz, and Randy Sullivan (collectively, the "Towing Defendants"). Plaintiffs allege violations of their constitutional rights and various statutes, under the Fourth, Fifth, and Fourteenth

1

Amendments. *See generally* ECF No. 29. Plaintiffs' allegations concern the search of Plaintiffs' commercial property located in Warren, Michigan and the towing of vehicles found on that property. *Id.*

On August 22, 2024, the Court issued an order dismissing the claims against the City of Warren Defendants. ECF No. 78. Now pending before the Court is the Towing Defendants' Motion to Dismiss (ECF No. 57). The motion was fully briefed. *See* ECF No. 67, 72. On September 30, 2024, Magistrate Judge Curtis Ivy, Jr. issued a Report and Recommendation (R&R) recommending the Towing Defendants' Motion to Dismiss be granted. Plaintiffs objected to that recommendation and the Towing Defendants responded to those objections. *See* ECF No. 82-84.

Having reviewed the objections and conducting a *de novo* review of the record and briefs, the Court concludes that Plaintiffs have failed to state a claim against the Towing Defendants. Reaching that conclusion, the Court overrules Plaintiffs' objections and dismisses this case. Accordingly, the Court will **ACCEPT AND ADOPT** the recommended disposition of the R&R (ECF No. 82), **OVERRULE** Plaintiffs' Objection (ECF No. 83); **GRANT** the Towing Defendants' Motion to Dismiss (ECF No. 57); and **DISMISS WITH PREJUDICE** Plaintiffs' Third Amended Complaint (ECF No. 55).

2

## I.

This case was originally filed on July 5, 2023, and the Complaint was amended on August 18, 2023, as a matter of right. *See* ECF Nos. 1, 25. On August 28, 2023, the Court granted Plaintiffs leave to file a Second Amended Complaint. *See* ECF No. 29. On October 23, 2023, the City of Warren Defendants moved to dismiss the Second Amended Complaint, or in the alternative for summary judgment. ECF No. 35. The Court granted that motion. *See* ECF No. 78. The City of Warren Defendant's Motion to Dismiss was originally considered by Magistrate Judge Ivy and he issued a R&R to the Court recommending that the motion be granted. *See* ECF No. 46. As a part of that R&R, Magistrate Judge Ivy noted that the only claims remaining in this case were against the Towing Defendants. *Id.*

After issuance of the R&R, Plaintiffs filed a Third Amended Complaint without leave of the Court. *See* ECF No. 55. The Court found that the filing of the Third Amended Complaint was premature because the Court had not yet ruled on the Magistrate Judge's R&R suggesting dismissal of the Second Amended Complaint. *See* ECF No. 78, PageID.866-867, fn1. However, the Court allowed the Third Amended Complaint to stand as to the Towing Defendants because they had filed a Motion to Dismiss the Third Amended Complaint (ECF No. 57). Therefore, for the purpose of this Motion, the Third Amended Complaint is the operative complaint.

The Third Amended Complaint alleges that Plaintiffs' Fourth, Fifth, and Fourteenth Amendment rights were violated when the Towing Defendants conspired with the City of Warrant Defendants to unlawfully tow their vehicles. ECF No. 55, PageID.600-601. Plaintiffs assert that the Towing Defendants were acting under the color of state law when they acted in concert with the City of Warren Defendants.[1] *Id.* The Towing Defendants move to dismiss the complaint on the basis that they are not state actors subject to suit under 42 U.S.C. §1983. Magistrate Judge Ivy found that alone as a basis for dismissal. ECF No. 82, PageID.885. Magistrate Judge Ivy also recommends, with dismissal of the federal claims, the Court decline to exercise supplemental jurisdiction and dismiss the state law claims against the Towing Defendants as well. *Id.* at PageID.889.

## II.

Pursuant to Federal Rule of Civil Procedure 72(b), if a party objects to a Magistrate Judge's report and recommendation, the District Judge, in conducting a *de novo* review, can "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted); *Mira v. Marshall*, 806 F.2d 636, 637 (6th

---

[1] Neither party has objected to the recitation of facts as found in the R&R (ECF No. 82, PageID.881-883), so the Court will adopt those facts as the basis for its decision.

Cir. 1986). "A general objection to the entirety of the magistrate's report has the same effects as would a failure to object." *Howard v. Sec'y of Health & Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Moreover, an objection that "merely restates the arguments previously presented does not sufficiently identify alleged errors on the part of the magistrate judge." *See VanDiver v. Martin*, 304 F.Supp.2d 934, 937 (E.D. Mich. 2004). The Court "is not obligated to address objections made in this form because the objections fail to identify the specific errors in the magistrate judge's proposed recommendations, and such objections undermine the purpose of the Federal Magistrate's Act, which serves to reduce duplicative work and conserve judicial resources." *See Owens v. Comm'r of Soc. Sec.*, No. 1:12-CV-47, 2013 WL 1304470 at *3, 2013 U.S. Dist. LEXIS 44411 at *8 (W.D. Mich. Mar. 28, 2013) (citations omitted).

When a party objects to portions of a Magistrate Judge's report and recommendation, the Court reviews those portions *de novo*. *See* Fed.R.Civ.P. 72(b)(3); *Lyons v. Comm'r of Soc. Sec.*, 351 F.Supp.2d 659, 661 (E.D. Mich. 2004). The Court has no duty to conduct an independent review of the portions of the R&R to which the parties did not object. *Thomas*, 474 U.S. at 153. However, a *de novo* review of proper objections requires at least a review of the evidence before the Magistrate Judge; and the Court may not act solely on the basis of a Magistrate

Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

### III.

Plaintiffs submit nine objections to the Magistrate Judge's R&R, however none of the objections address the legal basis of the recommended disposition of the Towing Defendants' motion. *See generally* ECF No. 83. The Magistrate Judge recommends dismissal of the federal claims against the Towing Defendants because, as alleged in their motion, Plaintiffs fail to show any state action on the part of the private towing defendants as required to successfully allege a § 1983 claim. *See* ECF No. 82, PageID.884-889. This Court agrees.

To hold a private entity liable under a § 1983 claim, a plaintiff must show that the entity's actions are reasonably attributable to the state. This can be done through the Public Function Doctrine, state compulsion, or a close nexus between the state and the private entity. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). Because Plaintiffs do not address the Magistrate Judge's analysis of this specifically, the Court accepts the Magistrate Judge's recommended disposition on this issue. However, the Court will still address each of Plaintiffs' objections in turn.

**Objection Nos. 1, 3, 4, 6**:

Plaintiffs lodge several objections that relate to the City of Warren Defendants or other aspects of the facts alleged in this case. Each of these objections is unrelated

5

6

to the any allegations against the Towing Defendants. Because these objections do not address any facts or conclusions of law at issue in the Towing Defendants' Motion to Dismiss or the Magistrate Judge's R&R, each of these objections are overruled.

**Objection No. 2:**

Plaintiffs state that Magistrate Judge Ivy erred by stating Plaintiffs did not state a Fourth, Fifth, or Fourteenth Amendment claim. This objection merely disagrees with the Magistrate Judge generally and does nothing to address any specific objection to the Magistrate Judge's analysis of state action in dismissing Plaintiffs' claims against the Towing Defendants. General objections to the entirety of an R&R have the same effects as a failure to object. *See Howard*, 932 F.2d at 509. Consequently, this objection is overruled.

**Objection No. 5:**

Plaintiffs state that an appeal has been filed and as result the trial court is divested of any further jurisdiction. This objection is also overruled. There was no final judgment issued in this case with respect to the Towing Defendants. The Court previously adopted the Magistrate Judge's R&R recommending dismissal of the Second Amended Complaint as to the City of Warren Defendants. The Towing Defendants remained active defendants in this case, and later filed their own motion to dismiss. The R&R currently before the Court is that recommending dismissal of

7

all claims against the Towing Defendants; and the Court has jurisdiction to rule on these remaining claims.

**Objection Nos. 7, 8:**

Plaintiffs state that the Magistrate Judge erred by not accepting the Second Amended Complaint (ECF No. 29) as the operative complaint. As noted earlier, Plaintiffs filed a Third Amended Complaint, in response to the Magistrate Judge's recommendation to dismiss the Second Amended Complaint. *See supra* at fn1. Therefore, the Third Amended Complaint became the operative complaint. Accordingly, these objections are overruled.

**Objection No. 9:**

Objection No. 9 is merely a restatement of previous argument, previous court filings, and other facts already considered. A rehashing of previous claims is not a proper objection, and the Court is not require to entertain repeat argument. *See VanDiver*, 304 F.Supp.2d at 937. Therefore, this objection is overruled.

IV.

The R&R also recommends that the Court decline to exercise supplemental jurisdiction and dismiss all state law claims against the Towing Defendants. ECF No. 82, PageID.889. With dismissal of the federal civil rights claims, the Court agrees that it would be proper to also dismiss the state law claims against the Towing Defendants. *See Sharwell v. Selva*, 4 F. App'x 226, 227 (6th Cir. 2001).

8

**V.**

Accordingly, the Court **ACCEPTS AND ADOPTS** the recommended disposition of Magistrate Judge Ivy's Report and Recommendation (ECF No. 46). The Towing Defendants' Motion to Dismiss (ECF No. 57) is **GRANTED**. Plaintiff's Objections (ECF No. 83) are **OVERRULED**.

**IT IS HEREBY ORDERED** that all federal claims as to the Towing Defendants are **DISMISSED WITH PREJUDICE**. Plaintiffs' state law claims against the Towing Defendants are **DISMISSED WITHOUT PREJUDICE** to be refiled in state court, if the Plaintiffs so desire.

**THIS IS A FINAL ORDER THAT CLOSES THE CASE.**

**IT IS SO ORDERED.**

Dated: November 20, 2024        s/Brandy R. McMillion
                                  Brandy R. McMillion
                                  United States District Judge

Case: 24-2095     Document: 9     Filed: 03/26/2025     Page: 65

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ELIZABETH NELSON, and
ALBERT THROWER

      Plaintiffs,

v.

ROBERT SCOTT, *et. al.*,

      Defendants.

_____/

Case No. 2:23-cv-11597
Hon. Brandy R. McMillion
Mag. Judge Curtis Ivy, Jr.

## **JUDGMENT**

    **IT IS ORDERED AND ADJUDGED** that pursuant to this Court's Order

Adopting the Recommended Disposition of the Magistrate Judge's Report and

Recommendation (ECF No. 86), entered on this date, this cause of action is

**DISMISSED**.

KINIKIA ESSIX
CLERK OF COURT
By: s/L. Hosking
Deputy Clerk

Approved:
/s Brandy R. McMillion
BRANDY R. MCMILLION
United States District Judge
Dated: November 20, 2024
Detroit, Michigan



**PRIORITY MAIL EXPRESS**
**FLAT RATE ENVELOPE**
POSTAGE REQUIRED

# PRIORITY
## MAIL
# EXPRESS®

...ATIONAL USE
. HERE

## FLAT RATE
## ENVELOPE
ONE RATE ■ ANY WEIGHT

RECEIVED
MAR 2 6 2025
KELLY L. STEPHENS, Clerk

...r domestic
...

...f insurance

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP



U.S. MARSHAL SERVICE



US POSTAGE AND FEES PAID    easypost
2025-03-2
41703-
C48543R
Commercial
0.5 LB ZONE 3    090100001301

### USPS PRIORITY MAIL EXPRESS    0007

ALBERT THROWER
1312 W 89TH ST APT 3
CLEVELAND OH 44102-1828

C023

WAIVER OF SIGNATURE

SHIP TO: POTTER STEWART U.S.COURTHOUSE
UNITED STATES COURT OF APPEALS 6TH
100 E 5TH ST RM 540
CINCINNATI OH 45202-3945

**USPS TRACKING #**



9470 1362 0832 6274 4775 34

WHEN USED INTERNATIONALLY, A CUSTOMS DECLARATION LABEL MAY BE REQUIRED.

This package is made from post-consumer waste. Please recycle – again.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail Express® shipments. Misuses may be a violation of federal law. This package is not for resale. EP13F © U.S. Postal Service; October 2023; All rights reserved.

---



# UNITED STATES
## POSTAL SERVICE®

# PRIORITY
## MAIL
# EXPRESS®



# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

To schedule free Package Pickup,
scan the QR code.



USPS.COM/PICKUP

**VISIT US AT USPS.COM®**
ORDER FREE SUPPLIES ONLINE

